John J. Walsh, J.
The defendant, having been indicted on two counts of robbery in the first degree, was found guilty after a jury trial on each of said counts on November 19, 1968 and is awaiting sentence thereon.
Defendant assigns two alleged errors in his motion: First, that defendant was denied the application of United States v. *549 Wade (388 U. S. 218) and People v. Ballott (20 N Y 2d 600) in the trial testimony with respect to the identification of the defendant as the perpetrator of these robberies; Second, that there was no proof before the jury to justify the necessary finding that the defendant was armed with a loaded pistol or a deadly weapon as alleged in the first count of robbery in the first degree.
The People argue that this is not properly a motion in arrest of judgment (Code Crim. Pro., § 467). However, in order to reach the merits of defendant’s claim, the motion will be treated as one to set aside the verdict and for a new trial. (People v. Lynn, 37 Misc 2d 461, affd. 20 A D 2d 931.)
A brief resume of what transpired at the trial will point up the vexing problem faced by the court on this motion.
No issue as to identification was raised prior to the trial by either the prosecution or the defendant. In presenting its case in chief, the People called various witnesses who identified the defendant in court as the perpetrator of each of the robberies.
Upon cross-examination, the defense brought out the fact that most of these witnesses had observed the defendant at police headquarters subsequent to his arrest through a so-called “ one-way” mirror. The testimony also brought out the fact that the defendant, a Negro, was alone at the time except for a police officer in uniform.
The defense made no motion during the trial to exclude the jury and conduct a Wade type hearing nor was a motion made to exclude the testimony as to identification. Both sides continued to present evidence as to identification without further comment.
The jury thus heard not only the original in-court identification but also the testimony as to the extrajudicial viewing of the defendant in the absence of counsel as well as the circumstances surrounding the viewing of the culprit at the time the crime was being committed.
Bealizing the possible issue of due process, the court in submitting the issue of identification to the jury, charged as follows: ‘ ‘ The prosecution must prove beyond a reasonable doubt all of the essential elements of the crime, including the fact that the accused is the person who committed those acts. As a jury, therefore, you must determine as a fact that the accused is such person. You do this by weighing and evaluating the evidence presented as to identification. The issue is this: Is the jury satisfied in their minds with the sufficiency of the identification and with the reliability of a witness who has testified to the fact of identification.”
*550 After charging the jury as to factors surrounding the observation of the culprit at the time of the alleged commission of the crime such as light, vision, time, location and emotional condition, the court said: ‘ ‘ Finally, you must consider whether or not the present identification is made as the result of some form of suggestion. Evidence has been adduced here by the defense to the effect that either some or all of the witnesses after the crime was committed viewed either photographs or the defendant himself at the police headquarters. To what extent, if any, did such intervening view of the defendant between the time of the alleged crime and the present identification in court taint or impair such identification is for the jury to decide on the basis of all of the testimony. Be careful to make your decision in a way which will exclude beyond a reasonable doubt, the possibility of a mistake in identification.”
As the trial court in United States v. Kinnard (294 F. Supp. 286; U. S. Dist. Ct., D. C., Nov. 4, 1968; 4 Crim. Law Reporter, p. 2141) said: “ There is much to be .said for putting the entire chain of identification from on-the-scene to in-court before the jury and permitting the jury to decide. The jury is an equal if not far better protection than the constant presence of counsel during police investigatory work. Trial by jury is a process guaranteed by the Constitution. In the judgment of many informed trial judges, the fairest result in identification cases will be achieved if we do not put blinders on the juries but permit the juries to determine identity with all the facts before them.”
The question presented on this motion is: Can the defense in a robbery case, where the identification of the accused as the actual perpetrator of the crime is almost always the principal issue of' fact to be determined by a jury, wait until the verdict is rendered before raising the issue of due process ? If the defendant does not raise the issue at any time before or at the beginning of the trial, must the prosecution before offering in-court testimony, ask the court to conduct a Wade type hearing?
Neither of these questions has been answered to date nor is the full import of Wade elaborated upon by appellate courts.
As a practical solution, this court in deciding whether a new trial should be granted, must review the evidence adduced at the trial under the due process doctrine (People v. Rivera, 22 NY 2d 453).
The Supreme Court of the United States has, in Wade and its related cases, expressly contemplated that in-court identifica *551 tions may be found capable of standing on their own feet, even though preceded by deficient pretrial confrontations.
This court should not undo the post -Wade trial here if independently considered, essential fairness is shown in the identification of defendant by. evidence that was substantial, reasonable and unquestionable and the defendant was given an adequate opportunity to probe all the relevant factors surrounding both the in-court and out-of-court identifications. A posttrial hearing would produce no additional information.
There were six witnesses called in connection with the first count of the indictment which charged a robbery at a grocery store. They were Gates, the owner; Waiman, the check-out clerk; Ingersoll, a stock clerk; and Ingro, Evans and Cole, customers. All six identified the defendant in court as the perpetrator of the crime. Gates and Waiman were at the check-out counter at the time and were face-to-face with the culprit; the others were in proximity to that location, approximately six feet away. All testified that they observed the culprit for from three to five minutes during the alleged robbery; that the lighting conditions were good. Ingersoll, the stock clerk testified that he had observed the culprit in the store for a half hour before the alleged robbery.
Cross-examination disclosed that Gates, Waiman, Evans and Cole had been shown photographs at police headquarters after the crime but only Cole made an identification. The crime was committed on Friday, August 9, 1968 and on Tuesday, August 13, after the defendant had been arrested for another robbery at a gas station, Gates, Waiman, Ingro and Ingersoll viewed the defendant at police headquarters through the one-way mirror.
Neither Cole nor Evans viewed the defendant at police headquarters, although previously Cole had picked out a photograph. The evidence did not disclose whose photograph Cole had picked out. Evans had not been able to pick out a photograph with any certainty.
As to the second robbery, only the victim, Stevens identified the defendant in court. On cross-examination, he said that shortly after the crime, he viewed the defendant through the mirror.
Upon review of the trial testimony, this court finds in each case of a witness identifying the defendant, that that witness’ in-court identification was not tainted or suggested by any previous view of the defendant under constitutionally condemned circumstances.
*552 In the case of U. S. ex rel. Geralds v. Deegan, Nov. 12, 1908, Judge MacMahon in the United States District Court for the Southern District of New York (292 F. Supp. 968, 974) said, in words strikingly appropriate here: “ In our search for the true basis of the witnesses’ in-court identification, we note at the outset that although the confrontation was suggestive, the witnesses here did not appear to have been affected. * * *
Thus, though suggestion flawed the confrontation, the record refutes the notion of susceptible victims dutifully echoing a crystallized mistaken identification.
‘ ‘ Even, if we assume that the victims did yield to illegal suggestion, it is still open to the prosecution to prove by clear and convincing evidence that the in-court identification had an independent origin. The Supreme Court suggests guiding criteria for application of this test. For example: (1) prior opportunity of the witnesses to observe the alleged criminal act; (2) the existence of any discrepancy between any prelineup description and the actual appearance of the accused; (3) any identification prior to lineup of another person; (4) identification by picture prior to lineup; (5) failure to identify the accused on a prior occasion, and (6) lapse of time between the act and the identification.”
In the instant case, the witnesses were in close proximity to the culprit in each case, under good lighting conditions for approximately three to five minutes. Thus, they had an ample opportunity to observe his features, his color, his weight, his height and his clothes, and to imprint his image and demeanor upon their minds.
In spite of the absence of a pretrial hearing, the court attempted to provide adequate safeguards against a possible mistaken identification. The witnesses’ descriptions of the person they saw committing the alleged crime, the conditions under which they viewed the defendant at the police headquarters, and their identification of the defendant in court as the person who committed the crime were presented to the jury, and the jury’s apparent decision that the defendant fitted the descriptions given ought not to be disturbed by this court. All of the factors enunciated in United States v. Wade (388 U. S. 218, supra [1967]) were presented, probed and decided at the trial.
Neither does the court see any reason for disturbing the verdict of guilt of robbery in the first degree under the first count of the indictment.
Motion is in all respects denied. The defendant may be arraigned for judgment.