COMMONWEALTH *vs.* PAUL BUMPUS.

Suffolk. May 6, 1968. — June 14, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Identity. Identification. Constitutional Law*, Assistance of counsel. *Practice, Criminal*, Assistance of counsel. *Pleading, Criminal*, Indictment.

Evidence at the trial of an indictment for breaking and entering a building in the nighttime, particularly evidence of the similarity of the observed personal appearance and clothing of the intruder to that of the defendant when arrested "a short distance from the scene" of the crime within an hour after it occurred and of the finding on the de-

fendant's person of a flashlight used by an occupant of the building, warranted a conclusion that it was the defendant who was the intruder. [497]

Summary of *United States* v. *Wade,* 388 U. S. 218, *Gilbert* v. *California,* 388 U. S. 263, and *Stovall* v. *Denno, Warden,* 388 U. S. 293. [498–500]

The "totality of the circumstances" surrounding the confrontation of a defendant arrested for breaking and entering a building in the nighttime and an occupant of the building, who had given a description of the intruder to a police officer and to whom the officer brought the defendant immediately after arresting him a short distance from the building within an hour after the crime occurred, did not show that the defendant was deprived of due process of law in the confrontation, although he was then without counsel. [501]

At the trial of an indictment for breaking and entering a building in the nighttime, the admission of testimony by an occupant of the building who had given a description of the intruder to a police officer and to whom the officer brought the defendant immediately after arresting him a short distance from the building within an hour after the crime occurred, with respect to what the witness had observed as to the apparel and color of the intruder and as to the apparel and color of the man in the officer's custody, and testimony that the defendant was the intruder, was not erroneous on the ground that the in-court identification was improperly supported by evidence of the prior identification made at a time when the defendant was in custody and without counsel. [502]

There was no error in the denial of a motion to dismiss an indictment on the ground that it was returned on insufficient evidence in that two of the Commonwealth's witnesses at the trial had not appeared before the grand jury which returned the indictment. [502]

INDICTMENT found and returned in the Superior Court on September 11, 1967.

The case was tried before *Quirico,* J.

*William P. Homans, Jr.,* for the defendant.

*W. Langdon Powers,* Assistant District Attorney, for the Commonwealth.

CUTTER, J.    Bumpus was found guilty upon an indictment charging breaking and entering a building in the nighttime with intent to steal.    He appealed from a sentence of six months in the house of correction.    See G. L. c. 278, §§ 33A–33G.    Portions of the evidence and certain facts, which on the evidence could have been found, are set forth below.

Greenberg, a student at Northeastern University, was in bed in his room at 214 Hemenway Street Boston, on the

early morning of July 13, 1967. About 3 A.M. he heard the outside door to the building being opened. Then he heard steps on the stairs. A man entered his room through the partly open door. Greenberg feigned sleep. He observed the man walk about his room, open drawers, and look in a closet. The man left after about twenty minutes. Greenberg called the police. Officer Fallon, and apparently other officers, arrived in ten minutes. After a talk with Greenberg, Officer Fallon went out. He returned in a short time with Bumpus.

Greenberg testified that the man who entered his room was wearing "white sneakers, dark pants, a white shirt, a 'T' shirt, a dark over-jacket . . . and a wrist watch," and was "colored." Subject to exception, he also testified that the man brought back by Fallon was "colored" and similarly dressed. In court Greenberg identified Bumpus as the intruder. Bumpus, he also said, was with Fallon when he came back.

Greenberg was then asked, "[D]id you identify the defendant?" This question was excluded after a bench conference, during which the trial judge, subject to exception, refused to hold a voir dire "in the absence of the jury to determine what part the confrontation . . . played in . . . Greenberg's . . . subsequent identification in court." A nonresponsive answer, "I identified him," by Greenberg (to a question about how Bumpus was dressed) was struck from the record and the jury at once were instructed to "disregard it entirely." On cross-examination Greenberg agreed that, as to his identification of Bumpus, his "state of mind" was that "[i]t could be the man; I am not really sure."

Officer Fallon testified that, after he obtained a description from Greenberg, he went "into the street looking for" someone fitting that description, and "a short distance from the scene" found Bumpus, "a man who fitted this description," who did not give responsive answers. This was twenty minutes to half an hour after starting his search. Fallon also stated that Bumpus was wearing "white sneakers, dark pants, white 'T' shirt, black type sweater-type

coat, and he had a wrist watch on his arm." Fallon arrested Bumpus "for . . . breaking and entering." He "frisked" him and warned him "that anything he told me could be used against him" and that he could use a telephone when they reached the station house. No mention of the right to counsel was then made, but no evidence of any interrogation of (or admissions by) Bumpus was introduced.

A flashlight was found on Bumpus's person. This was identified by William E. Perkins, another occupant of 214 Hemenway Street, as a flashlight (of which Perkins gave a detailed description) with a missing lens which had been "on a table beside the front door" and which the witness had used on occasion. A screwdriver also was found in Bumpus's pocket.

Officer Fallon took Bumpus to 214 Hemenway Street. Perkins and Greenberg came out on the street and talked with him while Bumpus was standing on the street. Bumpus was then taken away in the patrol wagon.

1. The trial judge denied a motion for a directed verdict, and indicated in doing so that, if the only evidence had been Greenberg's identification (which was somewhat equivocal because of his candor in expressing his doubts on cross-examination), he would probably have granted the motion. The judge stated, however, that all the evidence, including (a) the similarity of the description (including clothing) of the intruder and the appearance of Bumpus when picked up, and (b) the finding of the flashlight on Bumpus, warranted the jury in finding Bumpus guilty. We agree. The evidence (concerning events, all of which took place within the space of about an hour and which were substantially continuous), summarized above, if admissible (as we think it was), and the inferences which reasonably could be drawn from that evidence were sufficient in the aggregate to support the jury's verdict.

2. Bumpus's principal contention is that the trial judge erred in admitting (a) evidence concerning Greenberg's and Fallon's observation of Bumpus immediately after his arrest, and (b) Greenberg's in-court identification of Bumpus

without a voir dire to establish that the identification had a source independent of the prior confrontation. Bumpus argues that admission of the in-court identification was in violation of *United States* v. *Wade*, 388 U. S. 218, 226–227, 236–237, 240–242, *Gilbert* v. *California*, 388 U. S. 263, 272–273, and *Stovall* v. *Denno, Warden*, 388 U. S. 293. Although the operation of these decisions (announcing novel principles "not foreshadowed in . . . [Supreme Court] cases") is prospective only under the *Stovall* case, 388 U. S. 293, 299–301, the events of July 13, 1967, took place about a month after the three decisions. Accordingly, we are required to follow the principles announced by the Supreme Court of the United States in the three cases, so far as those principles may be relevant, although our decisions have never stated such principles, and although, prior to the *Wade* case, we had not supposed that such constitutional principles existed.

In the *Wade* case (see 388 U. S. 218, 220) a bank robbery took place on September 21, 1964. An indictment was returned on March 23, 1965. Wade was arrested on April 2, 1965, and counsel was appointed to represent him on April 26. Fifteen days later, without notice to Wade's lawyer, two bank employees observed a lineup and identified Wade. The post-indictment lineup (p. 237) was held (pp. 228–239) to be a "critical stage of the prosecution" at which Wade was entitled to the assistance of counsel.

In *Gilbert* v. *California*, 388 U. S. 263, 269–274, three eye-witnesses to one robbery observed Gilbert "at a lineup conducted without notice to his counsel . . . 16 days after his indictment and after appointment of counsel." The robbery occurred on January 3, 1964 (see pp. 270, 282). Gilbert was arrested on February 26 (see p. 283). The lineup occurred on March 26, after Gilbert had been indicted (p. 270, fn. 2). Witnesses, who were present at the lineup, identified Gilbert in court (pp. 269–270). The court (per Mr. Justice Brennan, over vigorous dissent) said, at p. 272, "The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but

were of independent origin was constitutional error. . . . [T]he record does not permit an informed judgment whether the in-court identifications . . . had an independent source." The case (p. 272) was remanded to the California Supreme Court "to afford the State the opportunity to establish that the in-court identifications had an independent source, or that their introduction . . . was in any event harmless error."[1]

The *Stovall* case, 388 U. S. 293, 294–295, did not involve a post-indictment lineup. A doctor was stabbed to death about midnight on August 23, 1961. His widow also was stabbed a number of times. She was placed in a hospital for surgery. Stovall was arrested on the afternoon of August 24. "The police, without affording . . . [Stovall] time to retain counsel," took him to the widow's hospital room handcuffed to a police officer. He was the only Negro in the room. She identified him. Later she testified to her identification of him in the hospital room and "also made an in-court identification." After holding the *Wade* and *Gilbert* cases prospective in effect only (pp. 296–306) and "therefore inapplicable" to Stovall's case (p. 296), the Supreme Court (again per Mr. Justice Brennan) considered (pp. 301–302) whether Stovall was "entitled to relief on his claim that in any event the confrontation . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." After stating that the "practice of showing suspects singly to persons for . . . identification, and not as part of a lineup, . . . [had] been widely condemned," the opinion (p. 302) proceeded, "However, a claimed violation of due process of law in the conduct of a confrontation depends on the *totality of the circumstances* surrounding it, and the record in the

---

[1] The opinion (pp. 272–273) also said that "[q]uite different considerations" governed testimony of witnesses "that they identified Gilbert at the lineup," because "[t]hat testimony is the direct result of the illegal lineup." It then proceeded, "The State is therefore not entitled to an opportunity to show that that testimony had an independent source. Only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup."

present case reveals that the showing of Stovall to . . . [the widow] in an immediate hospital confrontation was imperative" (emphasis supplied).

The confrontation in the present case, of course, was less immediately imperative than in the *Stovall* case.  It was likely that Greenberg, a student, would be available at trial, whereas the widow in the *Stovall* case was seriously wounded and might die.  It was, however, entirely reasonable for Officer Fallon to take Bumpus to 214 Hemenway Street upon his apprehension.  Although Officer Fallon testified that he was in a one man cruiser when he first went to the scene of the crime, the somewhat ambiguous evidence indicates other officers went with him and, in any event, were there upon his return.  It was wholly appropriate for Officer Fallon to desire the assistance of brother officers in taking Bumpus to the station and to provide them with transportation.  Also, despite the apprehension of a suspect, closely fitting the description of the intruder, in the immediate vicinity of the offence and within a brief period, Officer Fallon reasonably may have desired to know whether Greenberg thought Bumpus was the intruder.[2]  There is no indication in the record of any police desire or intention to deal with Bumpus unfairly or to do anything but ascertain the perpetrator of a night invasion of a dwelling, potentially dangerous to all the occupants.  If Greenberg had said that Bumpus was not the intruder, nothing before us suggests that he would not have been released promptly.  Certainly, while the events were very fresh in his mind, Greenberg was probably in a better position to have a clear recollection of the intruder than at any later time.  It would have been unusual, and possibly highly harmful to Bumpus's interests, to have taken him directly to the police station without stopping at 214 Hemenway Street.

---

[2] Investigation of the episode was not really over, despite Bumpus's arrest, if, as the jury found, Bumpus was the intruder.  Doubtless, the arrest was possible only because Greenberg had feigned sleep.  The intruder probably did not realize that he had been observed.  An intruder, who knew that he had been seen, would have been likely to leave an area where, at that hour of the early morning, he might have been conspicuous.  In the circumstances, what occurred was prompt, fresh pursuit.

The "totality of the circumstances" (see the *Stovall* case, at p. 302) shows no violation, intentional or otherwise, of due process of law in this confrontation at the culmination of a still continuing series of events. If Greenberg had pursued the intruder and the intruder had been stopped by a policeman during the pursuit and then had been shown at close range to Greenberg, it would have been a wholly reasonable confrontation, which hardly could have been avoided. The field confrontation which in fact took place seems to us to be of much the same type. Although Greenberg wisely did not risk serious harm by pursuing the intruder when he first observed him, he quickly brought about immediate pursuit (fn. 2).

Reasonable confrontations of this type, in the course of (or immediately following) a criminal espisode, seem to us to be wholly different from post-indictment confrontations (such as those in the *Wade* and *Gilbert* cases) in serious crimes, after a significant interval of time, and in the absence of already appointed counsel. The Supreme Court of the United States has not applied the principle of the *Wade* and *Gilbert* cases in such circumstances. Until we have more guidance than at present about the scope of necessary application of these cases, we shall regard them as not intended to apply to facts like those in the case at bar. This is an area where proper police protection of the public may be greatly embarrassed by rigid rules restricting intelligent, fair, police action. Such action must be appraised with commonsense appreciation of the problems which confront policemen patrolling a residential area. See *United States* v. *Ventresca,* 380 U. S. 102, 108–109, 111–112. See also *Commonwealth* v. *Wilbur,* 353 Mass. 376, 382–383, cert den. 390 U.S. 1010. The most recent decisions of the Supreme Court may lend some support to our view. *Simmons* v. *United States,* 390 U. S. 377, 382–386. See *Biggers* v. *Tennessee,* 390 U. S. 404 (but see pp. 405–406). Cf. *Wright* v. *United States,* 404 F. 2d 1256 (Ct. App. D. C.).

The trial judge was aware of the standards laid down in the Supreme Court cases. The record shows that he per-

mitted full development by cross-examination of all the facts relevant to (a) the confrontation on the night of the offence, (b) the in-court identification, and (c) Greenberg's at least residual uncertainty about its accuracy. The judge thus allowed ample investigation of the basis of the in-court identification and full disclosure of all matters going to its weight. While a voir dire would have been permissible, we conclude that it was not required.

3. We think that what was said in the *Gilbert* case, 388 U. S. 263, 273 (see fn. 1, *supra*) about out-of-court identifications in the absence of counsel, is inapplicable to the present record. Greenberg's testimony, so far as not struck out, concerning his observation of Bumpus in the custody of Officer Fallon related only to what he then saw as to Bumpus's apparel and color. Similarly, his description of the intruder was merely a statement of what he observed. We hold that there was no improper supporting of an in-court identification by evidence of prior identification. Greenberg's description of Bumpus in custody was essentially only a duplication of that given by Officer Fallon, who, of course, had not been present during the intrusion, and was not barred from describing Bumpus's appearance at the time of the arrest.

4. Bumpus also assigns as error denial of a motion to dismiss the indictment on the ground that it was returned on insufficient evidence. From cross-examination it appeared that neither Greenberg nor Officer Fallon testified before the grand jury. This evidence proves only that these two witnesses did not appear before the grand jury. See *Commonwealth* v. *Coco, ante,* 78, 79–80. It does not exclude the possibility that other officers present on the morning of the offence testified or that a summary of the available evidence was given by an investigator, essentially on the basis considered in *Commonwealth* v. *Ventura,* 294 Mass. 113, 119–120. See *Commonwealth* v. *Geagan,* 339 Mass. 487, 499; *Costello* v. *United States,* 350 U. S. 359, 363.

*Judgment affirmed.*