**UNITED STATES of America**

v.

**#1 Darnell R. KINNARD, Jr.**

**Crim. No. 774-68.**

United States District Court
District of Columbia.

Nov. 4, 1968.

James A. Strazzella, Albert W. Overby, Jr., Asst. U. S. Attys., for the United States.

James W. Respess, Washington, D. C., for Darnell R. Kinnard, Jr.

## MEMORANDUM OPINION

GESELL, District Judge.

Two issues are presented on this motion to suppress identification heard immediately before trial. It is claimed that the circumstances of the initial identification were unduly suggestive and that the defendant's rights under the Sixth Amendment were denied because an attorney for the defendant was not present when an on-scene identification was made by the complaining witnesses shortly after the alleged robbery.

The facts are simple and were but slightly disputed at the hearing. Miles Long Sandwich Shop was robbed at about 11:45 p.m. on March 25, 1968, by a man who entered during business hours and forced waitresses to turn over the contents of the cash register. The robber was wearing dark glasses ("shades") and a hat. The premises were brightly lighted by fluorescent lights and the waitresses, who were identifying witnesses at the scene, had had adequate opportunity to observe the man. When he left he got into a car and drove off with another man who was waiting in the car. An accurate description of the getaway car, including its exact tag number, was obtained from a taxi cab driver.

The robbery was immediately reported to the police and a lookout was broadcast at 12:05 a.m. that night. Alert police spotted the car at 12:08 a.m. The two occupants were arrested forthwith, advised of their rights and charged with the Miles Long Sandwich Shop robbery. A large sum of money was found on defendant's person and also a petty cash slip of the Miles Long Sandwich Shop when the occupants of the car were searched at the point of arrest. When the defendant was arrested he denied any participation. The driver of the car, however, admitted being in the parking lot of the Miles Long Sandwich Shop about the time of the robbery. The police had probable cause to make the arrest, although the officers, of course, had no way of then knowing the complete reliability of the lookout which had caused the arrest. Two police wagons immediately responded to the arrest scene by 12:13 a.m., along with other officers. The car, which fitted the lookout description, was impounded. In the meantime, other police, including detectives, had responded to the Miles Long Sandwich Shop and were there when the two police wagons, each containing one of the suspects, arrived at the robbery scene at about 12:25 or 12:30 a.m. The place of arrest was 10 or 15 minutes from the scene of the offense and the wagons went directly to the scene. The defendant had not been booked or taken before a Commissioner when taken to the scene.

The waitresses were brought out individually and separately and asked whether they could identify either of the two suspects. The identifying witnesses and the suspects were Negro. Defendant was seated in one of the wagons. The interior light of the wagon was on and it does not appear that defendant was then wearing his dark glasses. The defendant was immediately and positively then identified by at least two of the waitresses. None of the identifying witnesses had ever seen the defendant on any prior occasion. Mrs. Best, one of the waitresses and a witness at the identification hearing, was a candid and direct witness who had no doubt as to her identification but she acknowledged she was frightened at the time. Nothing was said or done by the police at the scene to trigger the identification except as that which may have been to some extent implicit in the over-all situation. The police acted with complete restraint and in a responsible manner at the scene.

■ After considering the evidence as a whole, the Court is persuaded that the impromptu identification at the scene was not so unduly suggestive as to violate the standards of due process under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), as interpreted by the Court of Appeals in Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206 (1967), cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968). The witnesses made positive identification, uninfluenced by the police or the atmosphere at the time. The Court feels that this is clear beyond a reasonable doubt considering the demeanor of the identifying witnesses and all the surrounding facts and circumstances. No grounds for suppressing the identification therefore exist under Stovall. The identification resulted from conscientious police work carried out with no improper motive and in a responsible, non-suggestive manner. It was confirmatory in character and gave greater assurance that a citizen who denied involvement was not being unjustly accused. Unless it must now be said

that the defendant was nonetheless entitled under the Sixth Amendment of the Constitution to have counsel present at the scene on this occasion, it is clear that the identification was fair and proper and should not be suppressed because limits set by the demands of due process were exceeded.

Counsel was not present, of course, and under the circumstances there was no attempt at waiver nor could a meaningful waiver have been made. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and cases that have followed have established the right of defendant to counsel at any critical confrontation arranged by the prosecution at pretrial proceedings. This general rule, however, was specifically made prospective by Stovall and its meaning, scope and effect is now just coming into sharper focus as post-Wade cases reach the active trial docket of the courts. Wade itself involved a lineup held after indictment and appointment of counsel for defendant but without the presence of counsel. In contrast, defendant here had been arrested and charged before the identification confrontation occurred but there had been no further procedural formalities. The problem, then, is whether the language and rationale of Wade extend to the factual circumstances before this Court, that is, whether defendant is entitled to counsel at any identification occurring subsequent to arrest.

The Court of Appeals for this Circuit has not decided this question. There are indications in some of the on-scene Stovall identification cases decided after Wade but before the doctrine was effective that counsel's presence would be held necessary, see Wise v. United States, supra, and Wright v. United States, 404 F.2d 1256 (D.C.Cir., January 31, 1968), but the matter has not been authoritatively determined. The Supreme Judicial Court of Massachusetts in Commonwealth v. Bumpus, 238 N.E. 2d 343 (1968), concluded in June that the Wade doctrine should not extend to

confrontations occurring prior to the formal proceedings; in other words, during the preliminary investigatory stage before counsel has been appointed. On September 16th of this year, however, the United States Court of Appeals for the Fifth Circuit, considering a case closely analogous on the facts to the present case, concluded that the *Wade* doctrine must apply. In Rivers v. United States, 400 F.2d 935 (5th Cir. 9/16/68), that Court determined that the clear import if not the holding of *Wade* was to require the presence of counsel at any identification confrontation following arrest. Thus, this Court is confronted with a matter of first impression in this jurisdiction which must be resolved in spite of ambiguities created by an imprecise decision of the Supreme Court and conflicting opinions of knowledgeable Appellate Courts.

█ *Wade* was decided by a sharply divided Court in the comfortable context of a situation where formal charges had been lodged, the defendant had counsel and the identification then occurred later without notice to defendant's counsel. This was considered a critical stage of the proceeding and an unconstitutional denial of counsel. The Government urges that the *Wade* rule should be limited to identifications after indictment or information has been lodged. This, however, is not possible under the broad language of the *Wade* opinion. Indeed, the dissenting Justices emphasized the all-inclusive nature of the ruling as stated by the majority. An on-scene identification after arrest is a critical stage of the proceeding and the defendant appears under *Wade* to be entitled to counsel and a formal lineup. In short, where arrest has taken place, subsequent identification must be attempted only after the defendant has counsel and a lineup can be arranged. Most reluctantly the Court is required to suppress the identification. The effect of this is to rule out of this proceeding any in-court visual identification by the witnesses who were at the scene, for the Government offered no proof which even suggested that an in-court identification could be accomplished independent of the influence of the improper on-scene confrontation.

Were this an isolated case, it would have no particular consequence. Hundreds of arrests have taken place on the streets of Washington since *Wade* and undoubtedly there have been many on-scene identifications: some from compelling necessity, some after hot pursuit, some where police sought confirmation, and others, for one reason or other. The variety of fact situations is obvious but the rule of law to be applied is unclear. A host of difficult problems will arise to plague the police and the courts for years to come unless the *Wade* rule is promptly clarified and its application made both practical and precise. There is no valid reason why there should be the present uncertainty. We are not permitted the luxury of the past where constitutional principles evolved from case to case in a leisurely and academic fashion. The *Wade* rule affects the daily routine of police in every major metropolitan area and they are entitled to know what identification procedures are required as a basis for a successful subsequent prosecution.

Many different situations occur on our streets daily which, as a practical matter, warrant if not require the police to present a suspect to a complaining witness shortly following detention or arrest. Indeed, such confrontations often occur even without any special police effort to bring them about. Defense counsel cannot always be riding in police cruisers. If police are no longer able to get identification confrontation promptly while the complainant's recollection is fresh, a drastic change in police procedures must take place. The police need greater flexibility than an absolute application of the *Wade* ruling as presently drawn appears to portend.

The Court fully recognizes that hazards are present in immediate one-man confrontations but such confrontations also have benefits in terms of their relation to effective police work and as a safeguard to preventing false accusation.

If there were some other practical way of handling identification matters promptly without fear of unwarranted suggestion, it of course should be used exclusively, but there is no such technique available. Certainly there is no magic in a formal lineup where counsel is present. Arranging lineups to meet availability of requisite lineup personnel, convenience of counsel and of complaining witnesses, and of the suspect out on bail, will result in delay, great uncertainty and additional inconvenience and expense to the victims of crimes. Moreover, it will not bring certainty to the identification process. There is still ample opportunity for subtle types of suggestion being made out of counsel's presence to the identifying witnesses. Even a lineup is suggestive and genuine mistakes are still likely to occur.

█ We must beware of a tendency to move in the direction of placing primary, if not absolute, reliance upon in-court identification for the in-court identification is the most hazardous of all. It is made after the defendant has been introduced to identifying witnesses in the courtroom in the course of the voir dire. The defendant sits apart from others, is easy to spot, and he may even wear prison garb. As rulings are presently developing, an in-court identification must be suppressed if any questionable or suggestive confrontation has previously occurred. It is only the most exceptional case that an in-court identification will be said to be wholly uninfluenced by prior identification confrontations. Thus we seem to be moving toward a situation where the victim will not see the accused until the trial, months if not years after the event and will be asked to make identification under extremely hazardous circumstances.

█ This is a troublesome trend and one which does not bode well for the fair administration of justice. The Appellate Courts should not forget that juries have a great deal of common sense and sophistication. They naturally wish to know how suspects are apprehended and first identified. There is much to be said for putting the entire chain of identification from on-the-scene to in-court before the jury and permitting the jury to decide. The jury is an equal if not far better protection than the constant presence of counsel during police investigatory work. Trial by jury is a process guaranteed by the Constitution. In the judgment of many informed trial judges, the fairest result in identification cases will be achieved if we do not put blinders on the juries but permit the juries to determine identity with all the facts fairly before them.

It is to be hoped that as the *Wade* rule and its implications are examined, the Appellate Courts will recognize the need for a realistic, less rigid approach to identification matters. Trial judges need to be given greater discretion and should not be limited by rules that attempt in the abstract to specify exactly how the police and the trial court should conduct themselves in every factual or evidentiary situation involving identification. Rulings tailored to the needs of individual cases should be allowed. We should be willing to place greater confidence in the inherent integrity and trustworthiness of the juries, guided by instructions from experienced trial judges who can always intervene and prevent a miscarriage of justice where identification has been overly suggestive.

The Court has urged the Government to appeal the present ruling suppressing the identification testimony. There is need for a prompt re-examination and determination of the meaning and detailed application of the *Wade* doctrine to the early investigatory stages of criminal prosecutions in this jurisdiction. The trial courts, police, defense attorneys and prosecutors need guidance, which rulings of this Court cannot give. A protracted case-by-case refinement of the *Wade* doctrine will not serve the best interests of this community. It is to be hoped that the Court of Appeals will take this matter out of turn if it is appealed and put it high on its docket for prompt and full consideration.

## ORDER

Defendant having moved to suppress visual identification of the defendant by Government witnesses present at the scene of the alleged offense who participated in the confrontation with defendant arranged by the police shortly after his arrest; and the Court, after hearing testimony and argument, having, for reasons stated in its Memorandum Opinion of even date, granted such motion,

It is hereby ordered that the testimony of any such witnesses as to the identity of the defendant in court at the trial or testimony as to prior identification at the scene or on any other occasion is suppressed, provided, however, that nothing herein shall be taken to prevent such witnesses from testifying to descriptions of the robber, if any, given to the police at the scene prior to such confrontation.

## ADDENDUM TO MEMORANDUM OPINION

After the Order in this matter was entered, the Government requested that the hearing be reopened to take testimony for the purpose of establishing that one of the identifying witnesses, Mrs. Best, was in a position to make an independent in-court identification, uninfluenced by the on-scene confrontation or other contacts with defendant subsequent to arrest. After considering the Government's application, the Court has determined that it would be impossible as a matter of law in this particular case for the Court to determine on the basis of the witness testimony that there was clear and convincing proof that her identification in court was independent of the unconstitutional confrontation and other contacts.* Mrs. Best had had no prior acquaintance with the robber and his features and general characteristics are not unusual. Although apparently Mrs. Best's testimony would be to the effect that she could make such an identification and her testimony would presum-

ably be in good faith, the circumstances of the on-scene confrontation are such that there is no way of ascertaining with any certainty the degree to which the prior identification unconsciously taints any subsequent identification. Too grave a danger of a miscarriage of justice exists under a ruling of law that would contemplate an in-court identification without the jury knowing of the earlier circumstances under which the identification was made, but these circumstances unfortunately must be suppressed and kept from the jury. Accordingly, the Court's Order will stand.

---

\* Where such prior identifications have occurred, the provisions of the Omnibus Crime Control and Safe Streets Act of 1968 (82 Stat. 197, Title II Sec. 3502) cannot be given literal application.