Henderson W. Morrison, J.
The defendant is charged with a violation of subdivision 1 of section 120.00 of the Penal Law (assault in the third degree). He has asked for and has been granted a Wade-Gilbert type hearing immediately prior to trial. The hearing has been held, and the following facts elicited:
At about 7:15 p.m. on the evening of February 22, 1969, the complainant, Evelyn Alcock, alighted from a bus in the vicinity of 65 Gotham Avenue, Elmont, New York. As she approached these premises, she was accosted by a male Negro who put his arm on the complainant. She told him to go away. He grabbed her, pulled her hair, and ultimately took a metal instrument from his pocket. Although the complainant kept turning her head to avoid being cut, ultimately her assailant cut her with the instrument on and about the nose. *432 The complainant testified that she screamed for help, and that a woman (later identified as Miss Eileen Fought) came out of a door of the above premises, and that the assailant ran away. Complainant further testified she was in the presence of her assailant for about five minutes. The complainant was brought into a neighbor’s house across the street. Miss Fought telephoned for the police from her own home. Miss Fought testified to haring observed the assailant for about one-half second standing next to the complainant in the middle of the street, about three car lengths away from herself and about one car length away from a street light which was then lit.
A police car arrived within about five minutes. The complainant was asked by Patrolman Jablon for a description of her assailant. Complainant testified that at this time she described her assailant as a male Negro, about 5 feet 8 to 5 feet 10 inches, having a “ Nigerian haircut,’’ a mustache, wearing a black and white checkered trench coat, bloodshot eyes, one of which was “ half-closed. ” Patrolman Jablon testified to haring received substantially the same description from the complainant, adding that the description included that the assailant was between 25 to 30 years of age and was between 150 to 175 pounds. He further testified that he made notes of this description by the complainant on a yellow paper, but that these notes were subsequently destroyed and discarded by him.
While this was taking place, officer Mastrosimone accompanied by officer Dolan, a police trainee, also responded to the radio call in a police car. Officer Mastrosimone testified that while riding and in the vicinity of Gotham Avenue and Hemp-stead Turnpike he was waved down by an unidentified man who informed him that a woman had been assaulted down Gotham Avenue and that the assailant, whom he described as a male Negro, about 5 feet 8 inches and wearing a black and white coat was running away toward Elmont Avenue. Officer Mastrosimone testified that he made a U-turn and caught sight of the defendant about a block away. Officer Mastrosimone asked the defendant to accompany him in the police car and drove to 65 Gotham Avenue. At this point, complainant was brought to the front door of the neighbor’s house and asked if the defendant was the man, and she answered in the affirmative. Complainant testified that the defendant was seated in the rear of the police car, and that there was a light inside of the car. Miss Fought also testified that she too, recognized and identified the defendant as the man she saw running away a few minutes earlier that evening. She testified that her identification was made after *433 the defendant was removed from the police car. The defendant, the complainant and Miss Fought were then taken to the Fifth Precinct Police Station, where the complainant testified that she again saw the defendant.
It is the defendant’s contention that the out-of-court as well as in-court identifications of the defendant by both the complainant and Miss Fought are inadmissible and must be excluded upon the trial by reason of the doctrines enunciated in United States v. Wade (388 U. S. 218), Gilbert v. California (388 U. S. 263), Stovall v. Denno (388 U. S. 293), and People v. Brown (20 N Y 2d 238).
The Wade, Gilbert, Stovall trilogy, after reviewing in depth, the dangers and risks of suggestion inherent in pretrial confrontations in the form of a lineup, show-up, or, as in Stovall v. Denno (supra), a “presentation” of the suspect alone to a witness, concluded: ‘ ‘ that the confrontation is a ‘ critical stage ’, and that counsel is required at all confrontations ” (Stovall v. Denno, 388 U. S. 293, 298.)
The Supreme Court further holds in Wade that exclusion of the courtroom identification would not be justified solely because of the absence of counsel at the lineup without giving the government an opportunity to establish by “ clear and convincing evidence ” (p. 240) that the in-court identifications were based upon observations of the suspect other than the lineup identification. Nevertheless, “ limiting the impact of violation of the right to counsel to exclusion of evidence only of identification at the lineup disregards a critical element of that right.” (p. 241). The court then goes on to state: “We think it follows that the proper test to be applied in these situations is that quoted in Wong Sun v. United States, 371 U. S. 471, 488, 1 “ [W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality, or instead by means sufficiently distinguishable to be purged of the primary taint.” Maguire, Evidence of Guilt 221 (1959).’ See also, Hoffa v. United States, 385 U. S. 293, 309.”
In the Wade case, the criticized lineup occurred after indictment and 15 days after appointment of counsel, and without notice to him. It was also seven months after the commission of the crime.
In Gilbert, the criticized lineup likewise occurred after indictment and after counsel had been obtained.
In Stovall, the criticized “ presentation” occurred two days after the commission of the crime and the day after the arrest *434 and arraignment of the defendant, at which time he requested counsel.
The language of the Supreme Court in Wade to the effect that counsel is .required at all confrontations has created confusion, uncertainty and conflicting decisions as to the application of its enunciated doctrines to confrontations which precede indictment, arraignment or arrest. (See United States v. Davis, 399 F. 2d 948; Russell v. United States, N. Y. L. J., March 19, 1969, p. 1, col. 7; Commonwealth v. Buckley, 238 N. E. 2d 343 [Mass.]; cf. Rivers v. United States, 400 F. 2d 935, and United States v. Kinnard, 294 F. Supp. 286.)
I am persuaded to follow United States v. Davis, Russell v. United States and Commonwealth v. Buckley, holding as they do that the Wade-Gilbert-Stovall doctrine of requiring the presence of counsel does not apply to on-the-scene identifications made within minutes of the witnessed crime. I believe that this course is further justified by the fact that certiorari was recently denied by the United States Supreme Court in United States v. Davis (393 U. S. 987).
The following language of the Circuit Court in United States v. Davis, commenting on this phase of the Wade case, is particularly applicable to the case at bar (pp. 951-952):
“ The question is just what the Court meant by ‘ confrontation.’ Murray’s exhibition of Davis and Horgan to Charland was surely one in the dictionary sense. But so would be a case where a man running away from the scene of an assault was collared by an officer who asked the victim and the bystanders whether the man was the perpetrator. It is hard to believe the Court meant to prevent an officer from making such a routine, uncontrived inquiry and to require that the victim and the bystanders be carted off to a police station, held on the spot until counsel could be provided, or dismissed until a lineup attended by counsel could be arranged at some later time. We do not read Wade and its siblings as saying that the mere fact of custody, especially when this is for an unrelated crime, automatically triggers the Sixth Amendment right to counsel, as it would the Fifth Amendment privilege against self-incrimination. The importance of custody from a Fifth Amendment standpoint is that it is conceived as furnishing the element of compulsion which that Amendment demands, see Miranda v. State of Arizona, 384 U. S. 436, 467 * * * (1966). The protection of the Sixth Amendment applies to ‘ the accused ’ in ‘ all criminal prosecutions,’ and while Wade makes clear that this includes certain pretrial proceedings, 388 U. S. at *435 224-225 * * * that is a long way from saying that the protection attaches as soon as suspicion is aroused. The fact of custody adds little of Sixth Amendment relevance * * *
“ A clue to the dividing line may be furnished by the Court’s repeated use of the term ‘ accused ’ and its reference in Wade, 388 U. S. at 225 * * * to Escobedo v. State of Illinois, 378 U. S. 478 * * * (1964). We have particularly in mind the passage in that opinion, 378 U. S. at 485-486 * * *: ‘ * * * the investigation had ceased to be a general investigation of “ an unsolved crime ” * * * Petitioner had become the accused, and the purpose of the interrogation was to ‘ ‘ get him ” to confess his guilt despite his constitutional right not to do so * * * It would exalt form over substance to make the right to counsel, under these circumstances, depend on whether at the time of the interrogation, the authorities had secured a formal indictment. Petitioner had, for all practical purposes, already been charged with murder. ’
“ The situation here had come nowhere near the accusatory stage there depicted.”
The conclusion that the Wade case does not require the presence of counsel at on-the-scene identifications occurring within minutes of the witnessed crime should not be construed to mean that in these circumstances the defendant is to be deprived of an inquiry into such identification and its bearing or effect upon any in-court identification. “ In post-Wade cases, excusable absence of counsel, while not dispositive, is among the ‘ totality of the circumstances ’ bearing on the due process question. And since this ease also presents a single-suspect in custody confrontation which may be suggestive, the court must carefully consider all possible evidence of actual unreliability in determining whether the requirements of due process have been met.” (Russell v. United States, supra.)
This court finds, after reviewing the evidence taken at the hearing, that the District Attorney has established by clear and convincing evidence that the out-of-court, on-the-scene identification of the defendant was not unfair, unreliable or unduly suggestive to either Miss Alcock or Miss Fought. And the court further finds that the District Attorney has established by clear and convincing evidence that the in-court identifications made by both Miss Alcock and Miss Fought were founded upon sources independent of the on-scene identifications, to wit: the respective observations made at the time of occurrence and the flight therefrom, and that the in-court identification was not tainted, colored or unduly influenced by the on-scene *436 identification. Upon the trial in chief, the People will be permitted to ask these witnesses to make in-court identifications of the defendant, and if the in-court identification is placed in issue, they will be permitted to testify as to their prior on-the-scene identifications. (Code Crim. Pro., § 393.)