**STATE of Missouri, Respondent,**

v.

**James Julius HAMBLIN, Appellant.**

**No. 54231.**

Supreme Court of Missouri,
Division No. 2.

Jan. 12, 1970.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

B. B. Turley, Routh & Turley, Rolla, for appellant.

STOCKARD, Commissioner.

Defendant has appealed from the judgment entered pursuant to jury verdict imposing a sentence of twelve years for first degree robbery.

From the evidence presented by the State a jury reasonably could find the following occurrences. About 8:30 o'clock of the morning of September 26, 1967, defendant and two other persons entered Pecan Joes on Highway 66 in Phelps County, Missouri, where Mrs. Reba Basham, the clerk and cashier, was alone. Defendant pointed a gun at Mrs. Basham and told her, "This is a robbery. Give me your money—all of it." Mrs. Basham opened a cash register and placed the till on the counter and defendant took from it all the bills. He then told her to open a second cash register, and while Mrs. Basham was doing so defendant "warped" her on her hand. Defendant then told her to get on the floor, and when she was on her knees he gave her a "judo lick across the back of

[her] neck and * * * four other licks [with the butt of the gun] on [her] head," and then ran after taking the bills from the cash register. After she called the Highway Patrol Mrs. Basham was taken to the Pulaski County General Hospital at Waynesville where fourteen stitches were required to close her wounds.

Just before 9:00 o'clock Highway Patrolman Jim Hudson saw defendant driving his automobile at an excessive speed on Highway 66. He contacted his headquarters and then stopped defendant's automobile. There were two other persons in the automobile besides defendant. Shortly thereafter two additional Highway Patrolmen arrived, and because they had "information that these men had committed a robbery" defendant "was arrested for armed robbery in Phelps County, Missouri, at Pecan Joes." Defendant and the two others were taken to the Pulaski County General Hospital "for identification purposes." Whether or not Mrs. Basham identified defendant as one of the robbers is not shown by the record, and there was no testimony concerning the confrontation at the hospital. At the trial Mrs. Basham unequivocally identified the defendant as the one who pointed the gun at her, took the money, and assaulted her. She was cross-examined concerning the basis of her identification, and among other things she said that she was able to observe the defendant, and that "when you're looking into a couple of mean eyes and the barrel of a gun" she could and did form an impression of him. She added that she would "never forget him the rest of the life."

After the jury returned its verdict, defendant's counsel advised the court in the presence of defendant that he was willing to file a motion for new trial. However, defendant first demanded the appointment of other counsel, and then after a lengthy discussion in which the court painstakingly attempted to explain the necessity for a motion for new trial in order to have a meaningful appeal, defendant af-

firmatively stated that he did not want his counsel to file such a motion. Subsequently, but timely, defendant filed pro se a motion for new trial in which he set forth as grounds therefor that (1) his arrest was illegal, (2) the evidence was obtained illegally, and (3) he was denied the right to dismiss his court appointed counsel. Because the reasons for these assignments are not set forth, the pro se motion does not comply with the minimum requirements of Supreme Court Rule 27.20, V.A.M.R. We shall, however, set forth the contentions presented as points in defendant's brief which pertain to the above general assignments, and one point not mentioned in the motion for new trial, to show their lack of merit. In addition, as to some it may be argued that they present a federal constitutional question which could be presented in a post-conviction proceeding, and if so, there is no compelling reason not to now consider and rule the issues.

The first point in defendant's brief is that the court erred in failing to discharge defendant because he was "illegally arrested and held without warrant," and he should have been discharged from custody after being held for twenty hours.

■ Defendant advances no reason why the arrest is claimed to have been illegal, and none is apparent from the record. He asserts in argument that "a search of the files fails to disclose that a warrant was ever issued naming appellant." This contention was not presented to the trial court at any time, and a statement in the brief that a search of the file by counsel (by whom we assume it was made) did not reveal a warrant does not prove that none existed. The record before this court does not establish that defendant's custody was unlawful. Any challenge by defendant concerning the warrant should have been presented to the magistrate or trial court in appropriate proceedings. State v. Worley, Mo., 383 S.W.2d 529. The warrant pertained to the validity of defendant's custody prior to his preliminary hearing.

It had no bearing on the merits of his trial, and defendant cannot now for the first time on appeal challenge the sufficiency or absence of a warrant.

■ Defendant next contends that the court erred in admitting in evidence items which were "illegally and unlawfully obtained." In his brief reference is had to the admission in evidence of a .38 caliber pistol and a bullet. There was no motion to suppress the evidence filed in advance of trial, and for this reason alone the contention now presented on appeal is without merit. See State v. Harrington, Mo., 435 S.W.2d 318. In addition, there was no objection at the time the items were offered in evidence. See State v. Hill, Mo., 419 S.W.2d 46. It is immaterial that Patrolman Hudson may have originally stopped the automobile for speeding. Defendant was arrested for robbery. This was acknowledged by defendant when he stated to the court at the time of allocution, "While I was sitting there he [Patrolman Hudson] got a call over the radio and he answered the call and then put us under arrest for armed robbery." No search of defendant's person or his automobile was made, if any search was in fact made, until after defendant was placed under arrest for robbery. As an incident to that lawful arrest the patrolmen were authorized to make a contemporaneous search of the person of defendant and of his automobile. State v. Johnson, Mo., 447 S.W.2d 285; State v. Moody, Mo., 443 S.W.2d 802; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Gullett v. United States, 8 Cir., 387 F.2d 307. However, we doubt that the evidence shows that either item was obtained as the result of a search. The bullet was found by one of the patrolmen on the ground near the automobile. Patrolman Rowe testified that he searched defendant but found no weapon and that he did not search the automobile. In answer to the question of whether he saw a gun "in the vicinity of the car" where he arrested the three persons, he answered, "Yes, sir. It was a .38

caliber Smith & Wesson revolver." Patrolman Hudson testified that he obtained "this pistol from [defendant's] car after he stated it was there." This was the only testimony on the issue. If Patrolman Hudson obtained the gun from the automobile with defendant's permission, he cannot now contend there was an unlawful search and seizure. If the gun was obtained as the result of a search and seizure it was not unlawful under the circumstances for the reasons above set forth.

Defendant next contends the court erred in refusing his request to discharge his court appointed counsel and appoint a "criminal lawyer." Defendant's appointed counsel at the preliminary hearing, and who subsequently represented him at trial, was the Hon. Eugene E. Northern, who had been engaged in the active practice of law for thirty-seven years and was the mayor of the City of Rolla. Prior to arraignment Mr. Northern, defendant, and the prosecuting attorney appeared before the court, and Mr. Northern advised the court that defendant was "displeased" with his services because he was not "trained and experienced as a criminal lawyer," and because as mayor of Rolla he had supervision over the city police and therefore was "somewhat obligated to the law enforcing agencies of this community." The court stated that it knew from personal experience that Mr. Northern was one of the "leading lawyers in this section of the country * * * and he's tried as many criminal cases * * * as nearly any other general practitioner in this area of south Missouri," and that one of the reasons he was selected was "because of his long experience and his reputation as an outstanding lawyer." The prosecuting attorney then stated that there were no witnesses for the State who were in the employment of the City of Rolla, and that as far as he knew no member of the city police, or any one connected with the city participated in the investigation of the case.

There was no conflict of interest on the part of appointed counsel, and the principles set forth in State v. Crockett, Mo., 419 S.W.2d 22, have no application. The constitutional right to counsel does not mean that the accused is entitled to any particular attorney, State v. Williams, Mo., 419 S.W.2d 49, and the selection of appointed counsel for an accused is within the discretion of the trial court. Mr. Northern was a competent and experienced attorney, and the refusal of the trial court to replace him was not an abuse of discretion, and did not violate any protected right of the accused.

Defendant's last point is that the "constitutional rights of appellant guaranteed under the Sixth Amendment of the Constitution of the United States were violated by failure of the State of Missouri to afford appellant aid of counsel at the lineup at Pulaski County General Hospital." Defendant also asserts that he was not advised of his right to counsel prior to the time he was identified by Mrs. Basham at the hospital, and there was no showing that the in-court identification by Mrs. Basham was not obtained by the illegal display of defendant to Mrs. Basham at the hospital. He relies upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

In the Wade case the United States Supreme Court held that a *post-indictment* lineup is a "critical stage" in a criminal proceeding at which the presence of counsel is required, and that a witness who identified the accused at a post-indictment lineup, without defendant's counsel having an opportunity to attend, could not testify to an in-court identification until a hearing was had and it was established by clear and convincing evidence that the in-court identification "had an independent source" and was "based upon observations of the suspect other than the lineup identification." In the Gilbert case it was held that

"The admission [in evidence] of the in-court identifications without first determining that they were not tainted by the illegal lineup [a post-indictment lineup at which defendant's counsel did not have an opportunity to be present] but were of independent origin was constitutional error." In Stovall v. Denno it was held that the "Wade and Gilbert rules should not be made retroactive." The defendant was taken to the Pulaski County General Hospital for "identification purposes" on September 26, 1967, which was after those two cases.

Although the record in this case does not affirmatively show that at the hospital Mrs. Basham identified the defendant as the robber, she did view him, and we shall assume that he was not advised of a right to have counsel at such a confrontation, that no counsel was present, and that the confrontation did not occur in what is referred to in the Stovall case as "The usual police station line-up." At trial, defendant, through his counsel, objected to "any testimony" of Mrs. Basham "in identification" of defendant as the robber, and suggested that a hearing should be held out of the presence of the jury. No such hearing was held. Assuming that the "Wade and Gilbert rules" are applicable to the factual situation of this case, and assuming that it cannot be determined from the record by this court that the introduction in evidence of the in-court identification "was in any event harmless error," the most to which defendant would now be entitled is to have this case remanded to the circuit court to determine whether the in-court identification had an independent source. Gilbert v. State of California, supra, 388 U.S. at p. 272, 87 S.Ct. 1951 at p. 1956. We therefore must determine whether the "Wade and Gilbert rules" are applicable.

"The metes and bounds of the Wade decision * * * are not readily ascertainable," Commonwealth v. Cooper, Mass., 248 N.E.2d 253, and one source of the problems in this respect is that the "expressions in the opinions in these cases [Wade and

Gilbert] * * * outrun their facts." United States v. Davis, 2 Cir., 399 F.2d 948. One of the vaguest areas is whether the opportunity for the presence of counsel is required at all confrontations, as the "far ranging discussion" (Commonwealth v. Cooper, supra) in the Wade case may be considered to imply.

In this case the robbery was committed by three persons about 8:30 o'clock in the morning. The robbers were not disguised, and the one identified by Mrs. Basham as defendant was close to her and in full view for several minutes under circumstances which would have caused her to form an impression of his facial features as well as his other characteristics. After the robbery Mrs. Basham was taken to a hospital for necessary emergency medical attention. Less than one-half hour later defendant was placed under arrest a few miles from the scene of the crime, and he and the two persons with him were immediately taken to the hospital for identification by the victim. This was not only sound police procedure but it was dictated by common sense. The fact that the patrolmen had arrested defendant and his two companions did not necessarily mean that they had apprehended the robbers. Apparently they were arrested as the result of a description received by radio. If by coincidence defendant and his companions matched the description but were not the robbers, the real robbers would be effecting their escape, and with the present means of rapid transportation, time was of extreme importance. In addition, prompt verification by the victim of the crime that the person apprehended was the person sought would prevent "the detention of an innocent suspect," and the delay resulting from the technical requirements of the Wade case would "diminish the reliability of any identification obtained." Russell v. United States, 133 U.S.App.D.C. 77, 81, 408 F.2d 1280, 1284. There is nothing to indicate that the patrolmen in this case were not acting in the best of faith or were not exercising good judgment in the matter.

The first court, so far as we can determine, which was called upon to rule whether the "Wade and Gilbert rules" apply to this factual situation held that they did not. Commonwealth v. Bumpus, 354 Mass. 494, 238 N.E.2d 343. In that case the eyewitness had feigned sleep while a burgler prowled his bedroom, and immediately afterward had called the police. The accused was picked up by the police in the neighborhood and brought back, without the opportunity of the accused to have counsel present, for identification by the eyewitness. The court stated: "Reasonable confrontations of this type, in the course of (or immediately following) a criminal episode, seem to us to be wholly different from postindictment confrontations (such as those in the *Wade* and *Gilbert* cases) in serious crimes after a significant interval of time, and in the absence of already appointed counsel. The Supreme Court of the United States has not applied the principle of the *Wade* and *Gilbert* cases in such circumstances. * * * This is an area where proper police protection of the public may be greatly embarrassed by rigid rules restricting intelligent, fair police action. Such action must be appraised with commonsense appreciation of the problems which confront policemen patrolling a residential area." Certiorari to the United States Supreme Court was denied. 393 U. S. 1034, 89 S.Ct. 651, 21 L.Ed.2d 579, and rehearing was also denied. 393 U.S. 1112, 89 S.Ct. 888, 21 L.Ed.2d 814. Subsequently, the Fifth Circuit Court of Appeals in Rivers v. United States, 400 F.2d 935, held that the rule announced in the Wade case "applies to any lineup * * * and * * * to a face-to-face encounter between the witness and the suspect alone, regardless of when the identification occurs, in time or place * * *." This language is sufficiently broad to include the face-to-face encounter between the felon and his victim at the time of the commission of the crime. Following this, the District Court for the District of Columbia in United States v. Kinnard, 294 F.Supp. 286, felt compelled by reason of the Rivers case to exclude an on-the-scene identification occurring approximately forty-five minutes after a robbery, in spite of the view of the court that the Wade case evidenced a "troublesome trend and one which does not bode well for the fair administration of justice."

We consider next Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280. There a witness saw a person emerge from a shop after he had heard the sound of breaking glass, and he made an immediate report to the police. The accused was arrested in the neighborhood and without the opportunity for counsel to be present the accused was taken to the site of the crime where he was identified by the witness as the person he had seen emerge from the shop. At the trial a police officer described the out-of-court identification made at the scene of the crime, and the witness made an in-court identification of the accused as the person he had seen at the shop. No hearing was held to determine that the in-court identification was not "tainted" by the out-of-court confrontation. After referring to the Rivers and Kinnard decisions and the equivocal language in the Wade case, the court said this: "While the language of *Wade* would thus seem to encompass prompt on-the-scene identifications, they do not fall within the holdings of *Wade* or its companion case, Gilbert v. California. The confrontations disapproved in these cases were post-indictment lineups. Similarly, though it spoke in broad terms, the [Supreme] Court was evidently focusing primarily on the routine lineup and show-up procedures employed by the police to obtain evidence for use at trial. The Court was concerned both to enhance the fairness of such procedures and to expose to judge and jury any elements of unfairness or unreliability which might attend them. In these typical cases, where counsel had been retained and time was not a factor it could find 'no substantial countervailing policy considerations * * * against the requirement of the presence of counsel.'" After discussing the out-of-court identification in the Russell

case, the court concluded that "it appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability * * *.' This probability, together with the desirability of expeditious release of the innocent suspects, presents 'substantial countervailing policy considerations' which we are reluctant to assume the Supreme Court would reject." It was then held that the "Wade and Gilbert rules" did not require the exclusion of the testimony of either the out-of-court or in-court identification of the accused by the eyewitness. In a concurring opinion by Judge Danaher, it was stated that "any other view would be sheer travesty," and he quoted from Senate Report No. 1097, pertaining to the Omnibus Crime Control and Safe Streets Act of 1968, which discussed the ruling of the Wade case, as follows: "It is incredible that a victim is not permitted to identify his assailant in court. The same is true of eyewitnesses who saw the victim assailed or murdered. The fact that eyewitnesses might on some occasion prior to trial have identified the accused, without a lawyer for the accused being present, cannot in reason, law, or commonsense justify such a disastrous rule of evidence. Nothing in the Constitution warrants it."

Notwithstanding that in the opinion in the Russell case the court expressly pointed out that the result there reached was contrary to the result reached by the Circuit Court of Appeals for the Fifth Circuit in the Rivers case, the Supreme Court denied certiorari. 395 U.S. 928, 89 S.Ct. 1785, 23 L.Ed.2d 245. We note also that after citing and relying on the Bumpus case, the same result was reached in United States v. Davis, 2 Cir., 399 F.2d 948, and certiorari was denied. 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449. The Russell case has been followed in Ester v. United States, D.C.C.A., 253 A.2d 537, and in Solomon v. United States, 133 U.S.App.D.C. 103, 408 F.2d 1306. The Bumpus case has been followed in State v. Bratten, Del. Super., 245 A.2d 556, and People v. Frank-

lyn, 59 Misc.2d 431, 299 N.Y.S.2d 540. Other cases which hold that the "Wade and Gilbert rules" do not apply in situations such as that before us include Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104; Young v. United States, 132 U.S.App.D.C. 257, 407 F.2d 720; and State v. Fields, 104 Ariz. 486, 455 P.2d 964.

As previously noted, the confrontation between Mrs. Basham and defendant occurred within a very short time after the robbery, and immediately after defendant's apprehension. It occurred at the hospital and not at the scene of the robbery, but that was required because of the immediate need for medical attention. We do not consider this to constitute a justifiable basis for a distinction between this case and the Russell case.

■ Based on what we consider to be a common-sense approach, and the impelling interest of the public that the police have an effective means to determine whether they have apprehended the wrong person so that if they have they can devote their efforts to apprehending the real criminal before he can make good his escape, and relying on the authority of the Bumpus and Russell cases, we conclude that the "Wade and Gilbert rules" did not preclude the admission in evidence of the in-court identification by Mrs. Basham of defendant as the person who robbed and beat her. We therefore do not reach the question of whether the introduction in evidence of the in-court identification "was in any event harmless error."

Defendant cites the Stovall case, but he makes no specific reference or contention as to its application to the facts of this case. We consider it because of the possible federal constitutional implications.

The Wade and Gilbert cases were based on the constitutional right to counsel at a "critical stage" in a criminal proceeding. The Stovall case presents the issue of whether the face-to-face confrontation without "the usual police station line-up"

between defendant and Mrs. Basham at the hospital "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [defendant] * * * was denied due process of law." The determination of this issue "depends on the totality of the circumstances surrounding it." In the Stovall case the accused was taken to a hospital room where a stabbing victim had received emergency medical attention, and at his trial evidence of the identification there made was admitted in evidence. In this case there was no evidence of an out-of-court identification by Mrs. Basham. We have held that the "Wade and Gilbert rules" did not require, under the factual situation of this case, that the trial court determine that the in-court identification had a source independent of the hospital confrontation before it was admitted in evidence. It would seem that the issue of whether the confrontation at the hospital constituted a denial of due process is not in this case. However, like the Wade case, the metes and bounds of the Stovall case are not readily ascertainable. For example, see the principal and dissenting opinions in Wright v. United States, 131 U.S. App.D.C. 279, 404 F.2d 1256. It could be argued that unless the hospital confrontation in this case was permissible within the rule of the Stovall case, to permit the in-court identification without first determining that it had a source independent of an impermissible confrontation would constitute a denial of due process of law within the broad and equivocal language used in the Stovall case. We shall, therefore, determine whether the hospital confrontation was permissible.

In the Stovall case it is indicated that every confrontation of a suspect with an eyewitness not a part of a lineup for the purpose of identification may be considered to be suggestive, at least to some degree. It was held, however, that such confrontations, when viewed in the totality of the circumstances in which the imperative need is considered, may be permissible. It was said that the confrontation in the Stovall case was imperative, and permissible, because the hospitalized victim " 'was the only person in the world who could possibly exonerate' " the accused, and it was not known how long she would live. We consider it equally imperative that the hospitalized victim in this case was the only person who could have told the police officers that defendant was not the robber so that they could devote their efforts to apprehending the actual robbers before they made good their escape. In the Stovall case it was concluded: "Faced with the responsibility of identifying the attacker, with the need for immediate action and with the knowledge that [the victim] could not visit the jail, the police followed the only feasible procedure and took [the accused] to the hospital room. Under these circumstances, the usual police station lineup * * * was out of the question." We cannot accept the proposition, at least without compulsion, that the "imperative" need referred to in the Stovall case can excuse the failure to employ the "usual police station line-up" only when it is employed for purposes of possible exoneration of the accused. We think the need is at least equally "imperative" when it is employed in the interest of society to determine that the person apprehended is the felon, so that if not the real felon can be apprehended before he effects his escape. Under the circumstances of this case, the police "followed the only feasible procedure and took [the defendant] to the hospital," and the "usual police station line-up * * * was out of the question." We consider the result reached to have support in the following cases: Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206, certiorari denied 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164; Young v. United States, 132 U.S.App.D.C. 257, 407 F.2d 720; United States v. Davis, 2 Cir., 399 F. 2d 948, certiorari denied, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449; United States ex rel. Rutherford v. Deegan, 2 Cir., 406 F.2d 217; Martinez v. State, Tex.Crim. App., 437 S.W.2d 842; People v. Franklyn, 59 Misc.2d 431, 299 N.Y.S.2d 540; and

Grant v. State, Mo., 446 S.W.2d 620. In Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104, in a footnote the court said this: "This court recently recognized the propriety of early identifications. Identification of the Appellant, alone, by the victim on the street shortly after the attack, followed by a hospital emergency room confrontation two hours later by another victim was upheld in McDonald v. United States, No. 21,872 (D.C.Cir., Dec. 4, 1968) (unreported)."

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.