**STATE of Missouri, Respondent,**

v.

**George William SUMMERS, Appellant.**

**No. 53719.**

Supreme Court of Missouri,
Division No. 1.

Oct. 13, 1969.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Jack E. Pohrer, St. Louis, for appellant.

SEILER, Presiding Judge.

Defendant was convicted of armed robbery and sentenced to ten years' imprisonment. He appeals on the ground of error in failing to suppress the identification by state's witness Pearl Gatewood, which defendant claims was the result of improper and unconstitutional procedure. We affirm.

There was a robbery of the St. Louis Housing Authority office at 1221 North 18th Street in St. Louis by four men. Miss Gatewood, a cashier, was sitting at her desk in the cashier's cage when a man with a stocking mask over his face, with a gun in his hand, told her to get the money from the vault. When she came out of the vault another man, without a mask, bareheaded, wearing a white polo shirt and bluejeans, said to let him through the cage door into her office and to get the money out of the cash drawer. He had a white pillowcase which he held open while Miss Gatewood put the money and change from the cash drawer into it. The man backed out the cashier's door and went toward the exit.

Miss Gatewood said she and the bareheaded, unmasked robber with the pillowcase were face to face for three to four minutes, that she was looking at his face, "because I was afraid". She was not sure as to whether he had a gun. When asked if she noticed anything "out of the ordinary" about the man, such as a gold tooth or glasses, she did not think so. She said she did not see any scars.

On direct examination the state asked if she ever saw the man again. Miss Gatewood answered that a week or so later Detective Davis brought a young man in the office and "when he entered the door I jumped down, because the man looked so familiar to me." Detective Davis and the man "kept walking and went into another office". She testified this was the same man who took the money from her cashier's cage in the robbery. She then pointed out the defendant in the courtroom as the same man. She also testified that "they" called her and another cashier, Pearline Statzel, "back in the office to look at him." The manager, Detective Davis and defendant were then in a private office and "They just said to look at him", which she did and then left the room. She said defendant looked familiar at the first glance she had of him when he and Detective Davis entered the office and then when she saw him "face to face", she was absolutely positive.

Detective Davis testified that on August 11, 1967, which was nine days after the robbery, he and another detective arrested defendant on an entirely unrelated charge. The two detectives had earlier in the afternoon been to the Housing Authority office to talk to the manager about the robbery, but the manager was away, so the detectives went to the Pruitt-Igoe area on some other business and then were going back to try again to see the Housing manager. They knew defendant from previous arrests and knew he was wanted on other charges. They happened to see him on the street and promptly arrested him. They then drove back to the Housing Authority office to see the manager on the way to the police station. They intended to show him some photographs. Considering it not wise to leave defendant in the car, they took him into the Housing office with them, apparently in handcuffs. They passed through a hallway getting to the manager's office. Miss Gatewood was at the water fountain and called Detective Davis over to her and told him that the man with the other detective was "one of the fellows that robbed the Boone office, he is the one who made me hold the pillowcase while the robbery was going on." Davis said he thought at first she was joking, but she said she was sure, that she "was standing right next to him." Davis then had Miss Gatewood step in the manager's office and view the defendant there.

Later that afternoon, at the police station, there was a three-man lineup, which was viewed by Miss Gatewood, other employees and victims of other robberies.

Defendant's defense was an alibi. He did not testify. Called as a witness by defendant, Detective Davis testified he warned defendant as to his rights when he was first arrested. He also testified he warned defendant he did not have to go into the lineup without an attorney present. Defendant said he did not want an attor-

ney, but did want to telephone his mother, which he was permitted to do. Davis also testified that when the Housing employees viewed defendant in the manager's office he asked "if they had seen him before or was he in the robbery there."

The defense also called Miss Gatewood as a witness and questioned her further on identification. She said the man who took the money from her was dark, had short hair, protruding lips and was taller than she. She did not notice his teeth and did not recall as to any scars on his lower lip or chin.

Defendant's position is that the confrontation, as he puts it, in the Housing Authority office, when defendant was with Detective Davis, was a confrontation without counsel and under circumstances so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate his rights under the Sixth and Fourteenth Amendments and the cases of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. He argues also that the police station lineup, following within a few hours, was highly suggestive and made when the viewers could not have eradicated from their memories the prejudicial events earlier in the afternoon at the Housing Authority office.

■ First, on the record before us, there was nothing staged, contrived or guided about the confrontation or identification which occurred when the detectives brought defendant with them into the business premises of the Housing Authority. It was only by coincidence the police had the man with them and that Miss Gatewood happened to see and recognize him as the robber. Assume she had been walking down the street and happened to see the defendant in the police car with the detectives, waiting at a traffic signal, recognized him and then informed the police. There is no difference in principle. We do not have here a " * * confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence * * *.", United States v. Wade, supra, 388 U.S. 1. c. 228, 87 S.Ct. 1. c. 1933. Even if defendant had been accompanied by counsel, this sort of accidental confrontation could occur. Counsel was not present, but absence of counsel in these circumstances cannot be said to " * * * derogate from the accused's right to a fair trial. * * *", United States v. Wade, supra, 388 U.S. 1. c. 226, 87 S.Ct. 1. c. 1932. Defendant's trial counsel could still make a good cross-examination of the witnesses against defendant and would not be rendered ineffective by not having been present when the identification was made.

■ Second, while there was no counsel at the lineup held later in the day at the police station, the undisputed testimony is that defendant was told he need not submit to a lineup without counsel present and elected to proceed without counsel. There is no claim or indication this was not a knowing and voluntary waiver. Further, there was no specific trial objection made to any of the testimony about the lineup or that the in-court identification was the result of the lineup. Finally, there is no indication that the in-court identification by Miss Gatewood was based on the lineup, State v. Mentor (Mo.Sup.), 433 S.W.2d 816. There were three men in the lineup, all brown skinned and about the same size and age. Miss Gatewood said the police asked her if she knew any of them, but did not refer to defendant as the robber or ask whether this was the man who robbed her. Under the evidence she had a good opportunity to observe the man who held her up and she unequivocally identified defendant as the man prior to the lineup.

Judgment affirmed.

All of the Judges concur.