STATE of Missouri, Respondent,

v.

Jess Willard McINTOSH, Appellant.

No. 57199.

Supreme Court of Missouri, Division No. 2.

April 9, 1973.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Nolen W. Berry, Neosho (court-appointed) for appellant.

HOUSER, Commissioner.

Jess Willard McIntosh, convicted by a jury of robbery in the first degree under the Habitual Criminal Act and sentenced by the court to 25 years' imprisonment, has appealed. We have jurisdiction since the notice of appeal was filed prior to January 1, 1972.

On April 12, 1971 defendant entered a general plea of not guilty and the court set the case for trial on April 28. On April 26 defendant filed a motion to be allowed to enter a plea of not guilty by reason of insanity under § 552.030,[1] and a motion to stay proceedings until defendant might obtain a mental examination to determine his mental capacity to understand the proceedings against him and assist in his defense under §§ 552.010 and 552.020. Under interrogation by the court with respect to de-fendant's mental condition defendant's counsel stated that he considered defendant's mentality below average and that defendant had not been able to supply counsel with the necessary information to defend him. Counsel conceded that he had no evidence that defendant had been hospitalized for any mental problem in any state institution or that defendant had any previous psychiatric treatment. The court overruled both motions and the case went to trial as scheduled.

◼ The court properly overruled defendant's motion filed under § 552.030 to allow him to enter a plea of not guilty by reason of insanity, on the ground that it was not timely filed. Section 552.030 expressly requires a defendant intending to rely upon the defense of mental disease or defect excluding responsibility to file a written notice of his purpose either at the time he enters his plea of not guilty or within ten days thereafter or at such later time as the court may for good cause permit. Defendant failed to file the motion at the time he pleaded not guilty. Defendant failed to file the motion within ten days thereafter. Defendant failed to demonstrate good cause for tardiness in filing his motion. Defendant failed to support the motion with evidence. The motion did not prove itself. Nothing of record indicates that it should have been sustained. A psychiatrist's report of a posttrial examination at a state hospital, ordered by the court after sentence was passed, was negative for mental disease or defect. Following a thorough examination during an extensive hospitalization defendant was found capable of understanding the proceedings, assisting in his own defense, appreciating the nature, quality and wrongfulness of his alleged conduct and capable of conforming his conduct to the requirements of the law. The court did not deprive defendant of any right to which he was entitled under § 552.030. State v. Lowe, 442 S.W.2d 525 (Mo.1969); State v. Holmes, 439 S.W.2d 518 (Mo.1969).

1. Section numbers refer to RSMo 1969, V.A.M.S.

■ The court properly overruled defendant's motion filed under §§ 552.010 and 552.020 to stay the proceedings, because as we have seen there was no evidence or conduct on the part of defendant which would have justified a determination by the court that there was reasonable cause to believe that defendant had a mental disease or defect excluding fitness to proceed. The pretrial interrogation of counsel produced nothing indicating that defendant had any such condition. After the trial, to make assurance doubly sure, the court ordered the examination referred to, the results of which confirmed the judgment of the court that the motion lacked merit. Finding No. 1 of that report was that "[T]he accused has· no mental disease or defect within the meaning of Section 552.010."

■ The trial court properly admitted the in-court identification of defendant, . which was not so tainted by and based upon pretrial photographic and circumstantial suggestion as to require reversal of the judgment.

At 1 p.m. on a January day in 1971 Otto Calender, age 76, was walking on the sidewalk on Broadway in Joplin when a man came up behind him, grabbed his left arm, dragged him about 50 feet from the sidewalk behind a store building to the back corner of the building, demanded his money, and raised his hand to strike him. Calender said, "Don't hit me. I'll let you have my money." Nevertheless the man hit Calender on the back of the head with something hard and shoved him down to the ground at the same time, then hit Calender in the face (breaking his nose) and took the wallet in Calender's back pocket. The wallet contained six one dollar bills. After taking the money out of the billfold the man started to run. The whole episode took about three minutes, during which Calender was able to see and recognize the man. Calender "had a good look at him" while he was dragging him because the man was slightly ahead of Calender. Cal-

ender remembered that he was wearing a tall cap with a straight top and a bill and was wearing "kind of bluish coveralls." During Calender's 5-day stay in the hospital officers of the law showed him two photographs of defendant, improperly stating to Calender that this was the man who robbed him and that they had apprehended him. No lineup was conducted. On cross-examination Calender stated that he trusted the police and wanted to tell the truth; that he recognized defendant from the pictures; that he also observed defendant at the preliminary hearing, dressed in jail clothes and sitting with his counsel at the defense table. In his in-court identification of defendant Calender testified that there was no question in his mind that defendant was the man who struck him and took his money; that he could identify defendant as the robber "without considering" the pictures shown him.

One Heiland, while attempting to drive his automobile into a parking lot, observed two persons, identified by him in court as Calender and defendant, walking in the same direction along the sidewalk which crossed the entrance to the parking lot, directly in front of him. Calender was 15 or 20 feet ahead of defendant when Heiland first observed them. Defendant was "reeling" a little bit from side to side, "weaving," so as to make one wonder what condition he was in. Heiland parked his car and was going into a nearby shop when out of the corner of his eye he "noticed something happen"—saw something that attracted his attention to the two men. When he turned and looked the two had disappeared. Curious, since "they sure disappeared in a hurry someplace," he walked down the sidewalk and turned in a parking lot. There he saw Calender, who was "just getting up." When Heiland went to help him he saw bruises on Calender's head and face. Calender's nose was bleeding. Heiland also saw defendant leaving the scene. As defendant crossed the street, walking fast, defendant turned around and looked at Heiland, who "got a good look at

[defendant], of his appearance." Heiland saw defendant make a throwing motion like he was trying to get rid of something. Heiland called the police, who arrived and took Calender to the hospital. Calender told the police that the man took his billfold. Remembering the throwing away motion Heiland walked down the alley and found defendant's empty billfold containing Calender's name and identification. After lunch Heiland, still incensed over the incident, returned to his car and drove around looking for the robber. He knew that if he saw the man he would "know him again." This was about half an hour after he found Calender. Turning into a street, Heiland saw defendant coming down the street. He recognized him because he "still had this reeling thing about him," and also by his cap. Heiland waited until defendant got ahead of him, then followed him slowly until Heiland saw a police car. Summoning the police, he told the officer "That's the guy." Defendant, who saw the police car about the same time Heiland saw it, dodged to the east and went behind an empty house. The officer, following Heiland into an alley, picked up and arrested defendant. When arrested, defendant had four one dollar bills and a nickel in his possession. In making his in-court identification of defendant Heiland described the cap defendant wore, and testified that there was no question in his mind as to defendant's identity when he saw him as he was driving around after lunch.

Citing Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), appellant asserts that the police action in displaying two pictures of appellant to Calender with the statement that the man in the pictures was the man who robbed him was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. In addition, appellant points out that he was never brought before a lineup for identification, and was identified by Calender at the preliminary hearing under "very suggestive circumstances"; and that at the trial Calender erroneously identified a cap as that of his assailant, which was not the same cap worn by appellant.

Considering the question in the totality of the circumstances, Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), we are of the opinion that the in-court identification had an independent origin; that there was ample opportunity for Calender to observe and fix the face and figure of the robber on his mind and memory during the 3-minute experience during which he was dragged 50 feet by the robber and then assaulted in broad daylight, face to face, during which time he got "a good look" at the man. That Calender's identification was independent of the photographic demonstration is attested by Calender's testimony that he could identify appellant as the robber "without considering" the pictures. The identification procedure employed in this case did not deny appellant due process of law. The admission of Calender's in-court identification of appellant was not error. State v. Parker, 458 S.W.2d 241 (Mo.1970); State v. Boswell, 433 S.W.2d 556 (Mo.1968).

This conclusion is buttressed by the strong identification testimony given by witness Heiland who, without exposure to any "impermissibly suggestive procedures," clearly and graphically identified this defendant after observing him on three occasions: before, immediately after, and again thirty minutes after the assault and robbery. We are secure in the belief that there is no reasonable basis for the claim of misidentification in this case.

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.