**STATE of Missouri, Plaintiff-Respondent,**

v.

**Robert Lee ROBERTSON, Defendant-Appellant.**

**No. 35610.**

Missouri Court of Appeals, St. Louis District, Division Two.

Nov. 6, 1974.

Charles D. Kitchin, Public Defender, Frederick R. Buckles, Howard Paperner, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Julian D. Cosentino, Asst. Circuit Atty., Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

STEWART, Judge.

Defendant appeals from judgment entered upon a jury verdict finding him guilty of robbery first degree by means of a dangerous and deadly weapon. No question is raised as to the sufficiency of the evidence to sustain the conviction.

Two white males robbed the Kroger store at 4301 Hampton Avenue in the City of St. Louis on April 1, 1967, at about 9:00 P.M. The store manager, William Walker, was about to enter the cashier's office when one of the men came up behind him, gun in hand, and thrust Walker through the doorway into the cashier's office. The cashier's office was a cubicle about eight foot by ten foot and partitioned to a height of about five foot. The portion above counter height was glass enclosed.

Two other employees, June Naumann and Phyllis Althage, were in the office when Walker and the robber came through the doorway. The robber's gesture with the gun prompted all present to back against the wall while he removed the contents of the cash drawer and placed the money inside the front of his shirt. It was estimated that he was in the small cubicle for from 3 to 5 minutes. During all of this time the three Kroger employees were close to and facing this man, who wore no mask. As Mrs. Naumann put it, they were "practically nose to nose". The robbers fled after obtaining $1500.00 to $2000.00.

The police came shortly after the robbery and obtained descriptions of the robbers from the witnesses. The Kroger employees remained at the store until the company auditor investigated the extent of the loss. They went to the police station some three hours after the robbery where they viewed a large number of photographs. Mr. Walker recognized a photograph of defendant as the man who held them at gunpoint and removed the money from the cash drawer. Mrs. Naumann, on seeing the photograph of defendant, was sure that he was the man who held them in the office. Prior to the time the witnesses identified the photograph of defendant, the police had no suspects in mind. Mr. Walker and Mrs. Naumann made positive identification of defendant in the trial.

The day the case was assigned out for trial, the defendant filed a motion to suppress any identification testimony because it would rest upon a pre-trial confrontation which was unnecessarily suggestive and conducive to an irreparable mistaken identification. The Court conducted a pre-trial hearing on the motion. During the hearing the defendant was permitted to amend his motion adding the further ground that any in-court identification would be based on a pre-trial post-indictment confrontation, at which defendant was not adequately represented by counsel. At the conclusion of the hearing, the Court overruled the motion as amended.

In addition to the above facts, which were developed both at the trial and in the pre-trial hearing, the hearing on the motion further developed that Mr. Walker testified before the December 1972 term of the Grand Jury; that out of some 6 to 7 photographs he recognized 2 photographs of defendant, one which he had seen on the night of the robbery and the other a recent photograph of defendant. The indictment in this case was returned on January 25, 1973.

On April 16, 1973, Mr. Walker, accompanied Sgt. Francis Sullivan of the fugitive section and another police officer, to a hearing at Chester, Illinois. Mr. Walker understood that he was to attend an extradition hearing, at which he would be asked to testify as to whether a person being held in Chester, Illinois, was the defendant. Sgt. Sullivan was not familiar with the case. He was just the transportation officer.

While seated in the courtroom, Mr. Walker first saw the defendant as he came from the lobby into the courtroom. Defendant was dressed in a business suit. He was under no restraint. There were a number of other white men coming

through the door at the same time and within 2 to 4 feet of him. These men were not in uniform. There were some men in uniform in the area. Walker testified that he recognized defendant immediately, as the man who had committed the robbery and whose photograph he recognized shortly after the robbery. No one pointed the defendant out to him. Walker had been in the courtroom for about an hour before he saw defendant and during that time a large number of persons had wandered in and out of the courtroom. Mr. Walker testified and identified defendant. Mr. Walker was cross-examined by a man who also presented argument to the Court on behalf of defendant in opposition to the extradition both in the courtroom and in chambers. This man is referred to by Sgt. Sullivan as defendant's attorney. The Uniform Criminal Extradition Law is a part of the statutory law of both the States of Illinois[1] and Missouri, thus, of necessity, this hearing was initiated by defendant.

Mr. Walker was the only witness to appear at the grand jury hearing and the extradition hearing; neither the identification of the photograph nor the identification at Chester was introduced in the trial. Mr. Walker and Mrs. Naumann made positive in-court identification of defendant at the trial to which objection was made by defendant upon the grounds stated in his Motion to Suppress.

As we read defendant's point relied upon, he complains only that the confrontation in the courtroom was so suggestive as to be conducive to mistaken identity, citing Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967); Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969); State v. Hamblin, 448 S.W.2d 603 (Mo.1970), and State v. Townes, 461 S.W.2d 761 (Mo.1970).

The cases cited by defendant do enunciate the principal here involved as subsequently discussed. However, each were cases in which the defendants were under obvious restraint and involved prompt one-on-one confrontation and suggestive to a high degree. However, the confrontations were imperative under the circumstances and thus held not to be violative of the rights of the defendants. A discussion of the factual issues in those cases would be of no value here.

Contrary to the assertion of the State, the confrontation at the Chester courthouse was a post-indictment pretrial confrontation which would call for the application of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), which, within the confines of the facts of that case, holds that such a confrontation is a "critical stage" in a criminal proceeding at which defendant must be represented.

■ Defendant raised the question in the Amended Motion to Suppress and in the Motion for New Trial but apparently does not raise the point here, although he makes the flat assertion in his argument that his ". . . Sixth Amendment" rights were violated. To eliminate any

1. Ill.Rev.Stat.1971, Ch. 60, Sec. 27. "No person arrested upon such warrant shall be delivered over to the agent whom the Executive Authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of the circuit court of the county wherein he is arrested who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure within a reasonable time and opportunity, not less than 24 hours, legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the agent of the demanding state.

Either party may appeal to review the judgment or order of the circuit court, as the case may be."

question we rule that defendant was adequately represented by counsel and thus this case does not call for the application of United States v. Wade, *supra*.

We will interpret defendant's complaint to be that the identification of defendant made by Mr. Walker while seated in the courtroom in Chester, Illinois, was so unnecessarily suggestive and conducive to irreparable mistaken identity that he was denied due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States. Stovall v. Denno, *supra*. The determination of this issue "depends on the totality of the circumstances surrounding . . . [the identification]." Stovall v. Denno, *supra*. See also State v. Hamblin, *supra*, for an exhaustive discussion of the authorities.

■ The focus of defendant's complaint is the identification which Mr. Walker made of defendant while awaiting the extradition hearing in Chester, Illinois. It is true that Mr. Walker was aware that he was in Chester to determine whether the person held was in fact defendant. There is no evidence that he was told that the party was in fact defendant. When he first identified defendant in Chester, he recognized him spontaneously. No one pointed him out. Defendant was not handcuffed or otherwise restrained. He was not isolated. He was dressed in business dress and came through the courtroom door with other white males. The trial court thoroughly explored the defendant's contentions and there was ample evidence to warrant its finding that "in the totality of the circumstances" this identification was not so unnecessarily suggestive as to be conducive to irreparable mistaken identity. Not being improper, the reliability of the in-court identification was for the jury. Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969).

It can also be said that this confrontation was initiated by the defendant who took advantage of his rights under the laws of the State of Illinois. Ill.Rev.Stat. 1971, Ch. 60, Sec. 27. As was said in State v. Summers, 445 S.W.2d, 369 (Mo. 1969) at 371 "We do not have here a ' * * * confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence * * *', United States v. Wade, supra, 388, U.S. 1. c. 228, 87 S.Ct. 1. c. 1933."

■ We further find that Mr. Walker's in-court identification did have a source independent of the identification at Chester, Illinois, which would also warrant its admissibility. State v. Ramsey, 477 S.W. 2d 88 (Mo.1972). In this case Walker and the other witness observed the defendant face to face for up to 5 minutes at the time of the robbery. Within 3 hours of the robbery, while the vision of the robber was fresh, they identified the photograph of defendant out of a large number of photographs. The police did not have a suspect in mind at the time, thus there is no indication of prejudicial suggestion on the part of the police at this time. In late 1972 or early 1973, Mr. Walker was able to identify the photograph of defendant as he was at the time of the robbery in 1967. He selected these photographs out of some 6 or 7 photographs before the Grand Jury.

The ruling of the trial court and our consequent affirmation is further fortified by the clear and unequivocal identification of defendant made by Mrs. Naumann at the pretrial hearing on the Motion to Suppress and at the trial. State v. McIntosh, 492 S.W.2d 843, 846 (Mo.1973).

The judgment is affirmed.

SMITH, P. J., and KELLY, J., concur.