STATE of Missouri, Respondent,

v.

Raymond E. McCOLLUM, Appellant.

No. KCD 27384.

Missouri Court of Appeals, Kansas City District.

Sept. 2, 1975.

Willard B. Bunch, Public Defender, Philip H. Schwarz, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment and sentence to consecutive 50-year terms on jury verdict finding Raymond E. McCollum guilty of forcible rape and sodomy.

No question is raised on the appeal as to the sufficiency of the evidence. The prosecutrix testified that late in the evening of October 10, 1973, she was walking on a Kansas City street when a man and a woman, later identified as Raymond E. McCollum and his wife, drove up in an automobile and offered to take the prosecutrix to her destination. She got into the automobile, but instead of taking her where she requested, appellant drove her to an apartment where he and his wife and four children lived. There prosecutrix was forced against her will to undergo numerous sexual activities with appellant and his wife. Appellant and his wife threatened the prosecutrix with what she thought was a pistol and both struck her on several occasions.

The prosecutrix was permitted to leave the apartment after two or three hours. She promptly called the police department and officers responding to her call were directed by her to the apartment where appellant and his wife were placed under arrest.

Appellant testified that the prosecutrix, whom he did not know, came to his apartment on the night in question and was allowed to use the telephone. He stated that she remained there 15 to 20 minutes and was then driven in a car by him and his wife to an address given by the prosecutrix. He denied any sort of attack on the prosecutrix.

■ Appellant's first assignment of error is based upon the trial court's overruling his motion to suppress a gas gun seized upon his arrest and in permitting the device to be introduced in evidence.

At a hearing on the motion to suppress, a police officer testified that when he met the prosecutrix after her call, she gave him a description of her attacker, which included a large tattoo on his chest and a tattoo of a knife on his arm. She told the officer that a small silver gun was used in the attack. She accompanied the officer to the apartment. He knocked on the back door, but received no response. He was leaving with the prosecutrix to take her to the hospital when another police car arrived and three officers went to the front door. They knocked and McCollum opened the door, wearing only his trousers. The tattoo described by the victim was apparent and they placed appellant under arrest and handcuffed him.

Two of the officers went to a bedroom in the rear of the apartment to place Mrs. McCollum under arrest. As he entered the bedroom, one of the arresting officers saw a pistol on a dresser just to the right of the bedroom door. One of the officers took the weapon, a gas pistol.

Appellant contends that the trial court erred in failing to sustain his motion to suppress because the weapon was the object of an unreasonable search, made without a warrant, and not incident to his arrest. The thrust of his argument is that it was only after he had been arrested and after the police had "invaded" the entire apartment and arrested his wife that they re-entered her bedroom and seized the gun, introduced in evidence against him. Appellant does not challenge the legality of the arrest of either himself or his wife.

The trial court properly concluded that the weapon was not the product of an unlawful search. Far from being a search such as was condemned in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the action of the police here was clearly within the limits laid down in that case. In that case the court stated (395 U.S. 762–763, 89 S.Ct. 2040):

" * * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within

his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

According to the arresting officer, the gun was in plain view when they entered the bedroom to arrest Mrs. McCollum. Under the above-quoted language of *Chimel,* its seizure was not the result of an unreasonable search. Appellant's version that the gun was obtained upon a re-entry of the bedroom following the arrest is supported by neither the testimony of the police officers nor the testimony of Mrs. McCollum at the hearing on the motion to suppress. Appellant's further citations of *Root v. Gauper,* 438 F.2d 361 (8th Cir. 1971), and *United States v. Goldenstein,* 456 F.2d 1006 (8th Cir. 1972), are not in point, as neither involved a search incident to an arrest.

The fact that the weapon was observed and seized following appellant's arrest and in another room does not make its seizure illegal. " * * * And the *Chimel* decision has been construed not to prevent a search incident to an arrest from extending to rooms of a house other than the room where the arrest is made, where the arresting officers have reasonable cause to believe, based upon facts available at the time, that additional persons might be on the premises and might be involved in the offenses charged or might pose a security risk for the officers. Upon making a search for additional persons, the 'plain view' rule applies and justifies the seizure of evidence falling into the officers' plain view, although the *Chimel* doctrine would have prevented any such search for the sole purpose of discovering evidence." 68 Am.Jur.2d Searches and Seizures § 94, p. 749 (1973). See *People v. Block,* 6 Cal.3d 239, 103 Cal. Rptr. 281, 499 P.2d 961 (1971).

In this case the police knew that two people were involved in the attack and that a weapon had been employed. In such circumstances, they properly looked elsewhere in the apartment for the second participant and properly took the weapon, after observing it in plain view.

Appellant next contends that the trial court erred in failing to sustain his motion to suppress evidence pertaining to the victim's identification of his automobile as the one in which she was taken to the apartment. According to one of the officers, he, accompanied by the victim, first went to the rear door of the apartment and knocked but no response was received. When they left to go to the front of the apartment, the victim pointed out an automobile parked on the street as the "suspect's car." Following the arrest, the auto was "impounded" and towed to police headquarters. No warrant for its seizure was obtained. Defense counsel's motion to suppress evidence concerning the automobile was overruled. The objection was renewed at the trial and overruled and the victim was permitted to testify that she identified an automobile that she had ridden in earlier in the evening. She stated that she recognized it from, among other things, "two bag things like" in the rear seat. A police officer testified that the victim stated that she could identify the auto by the fact that she had torn a piece of upholstery off the rear seat. He testified that he examined the auto and found the torn upholstery.

On this appeal, appellant contends that the evidence pertaining to the automobile was the result of an illegal search and seizure. No evidence was presented regarding any items taken from the vehicle. The claim that the testimony of the victim identifying the vehicle was the product of an illegal search is tenuous, at the best, but any question is obviated by appellant's own testimony that he had driven the victim in his auto to the destination she had requested, following her uneventful, by his version, visit to his apartment. See *State v. Smith*, 357 Mo. 467, 209 S.W.2d 138, 140–141[2, 3] (1948).

Appellant's next point is argued in his brief as follows:

"The prosecuting attorney began to question Detective Alfred Fracassa concerning a statement taken from the wife of the Appellant who was not charged in the same case with him. Appellant's counsel objected and after some discussion among counsel and the Court, the prosecuting attorney asked no further questions on that line to that witness. (T. 145–T. 146)

"Thereafter, during the closing half of his argument, the prosecutor said as follows:

'He couldn't explain away this (indicating) nor could he explain away this except when he told Sergeant Cowdry that he had his shirt off. His testimony is the only testimony rebutting any of the State's testimony, even though we know Detective Fracassa that he interviewed Sharon McCollum and . . .'

"At that point, Appellant's counsel objected and the Court sustained the objection and cautioned the jury not to consider the prosecutor's statement. (T. 205) Appellant's counsel then asked for a mistrial and it was denied. (T. 206)

"Counsel may not refer to facts which are not in evidence during his closing argument; *State v. White*, [Mo.], 440 S.W.2d 457.

"In the case at bar, counsel's reference to a statement taken from the wife of the Appellant, in the context of his closing arguments, only leaves the jury with the implication that such a statement constituted an admission against the Appellant's interest, and was highly prejudicial and inflammatory. *State v. Woodard*, [Mo.App.], 499 S.W.2d 553. Appellant was denied a fair trial because of this reason and should be given a new trial."

The transcript shows that, following the remarks of the prosecutor above quoted, appellant's counsel made the following objection:

"MR. SCHWARZ: We object to counsel's reference to the fact that Sharon McCollum did not testify in this cause.

\* \* \* \* \* \*

"It is obvious to the jury she didn't testify. She sat through the whole trial. He

referred to her being questioned by Sergeant Fracassa and he knows quite well that the statutes of Missouri provide that the spouse of a defendant is an incompetent person to testify in a defendant's case without the defendant's consent and that the defendant's fifth amendment constitutional rights to self-incrimination extend to his spouse through the statute and constitution of Missouri.

"Now we contend that this is error and prejudicial error for the prosecutor to mention this in his closing argument. I ask the Court to sustain the objection and admonish the jury not to consider the counsel's statement and at this time we will ask the Court to do that.

"THE COURT: All right.

"(Proceedings returned to OPEN COURT:)

"THE COURT: The objection is sustained and the jury is instructed to disregard the last comment of Mr. Dakopolos.

"Counsel approached the bench and the following proceedings were had:)

"MR. SCHWARZ: And we ask the Court to declare a mistrial because of that.

"THE COURT: Motion for mistrial is overruled."

Comparison of the argument here advanced with the objection voiced at the trial shows that appellant is now attempting to rely on a ground of objection, different from that voiced at the trial. This he cannot do and present a question for appellate review. *State v. Davis*, 482 S.W.2d 486, 488–489[6–8] (Mo.1972); *State v. Stevens*, 467 S.W.2d 10, 18[4] (Mo.1971).

Appellant finally attacks the constitutionality of Rule 24.04, which permitted his trial on a multiple count information. This contention is answered by the recent decision of the Supreme Court in *State v. Baker*, 524 S.W.2d 122 (Mo.banc 1975), in which the court held unconstitutional § 546.480, RSMo 1969, requiring mandatory consecutive sentences in a case such as this, but held Rule 24.04 constitutional.

Appellant is, however, entitled to consideration of his sentencing in the light of *State v. Baker*, supra, the transcript here not showing that the consecutive sentences were not imposed under the compulsion of § 546.480. Accordingly, the judgments of conviction are affirmed; the consecutive sentences are set aside, and the cause is remanded for the limited purpose of resentencing by the court in an exercise of discretion as to whether the sentences shall run concurrently or consecutively.

All concur.