STATE of Missouri, Plaintiff-Respondent,

v.

Carl MULLEN, Defendant-Appellant.

No. 35657.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Nov. 25, 1975.

Motion for Rehearing or Transfer
Denied Jan. 23, 1976.

Application to Transfer Denied
March 8, 1976.

Kevin M. O'Keefe, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Clarence Thomas, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Nels C. Moss, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

STEWART, Judge.

A jury found defendant guilty of murder in the first degree and assessed his punishment at life imprisonment. It also found him guilty of robbery in the first degree by means of a dangerous and deadly weapon, but was unable to agree upon the punishment. The court assessed the punishment at 25 years imprisonment on the latter count, the sentences to run consecutively.

Defendant assigns error in the giving of an instruction with respect to felony murder; in the failure to have the psychiatric examination performed by a licensed psychiatrist; and in the failure of the court to grant a second psychiatric examination. We affirm the judgment.

Artie Hall operated a small dice game over weekends in the basement of a building at 2105 Salisbury in the City of St. Louis. The basement was divided into two rooms separated by a partition in which a door had been hung. The dice game was set up in the room under the front portion of the building. Entrance was gained to the game by going through the basement door at the rear of the building, through the rear room and then through the door in the partition to the gaming room. Artie was employed in the neighborhood of the game and the players were primarily fellow employees or acquaintances. On Friday, June 30, 1972, the game commenced at about 4:00 p. m. At about 11:00 p. m. a person referred to as Roy, who was known to Artie Hall, came through the door to the dice game followed by defendant and his brother Larry. Roy was "drunk like he always does (sic)." Defendant and his brother were strangers to the game. Defendant made two bets which he lost. He and his brother then left. Artie Hall was suspicious of the two strangers and after they were gone a few moments he went outside and looked for them but did not see them. He remained outside the basement. About twenty minutes later a car, containing defendant and his brother and two other men, pulled into the alley behind 2105 Salisbury. All four men got out of the car and came toward the building. Defendant asked Hall if the game was still on. Hall told him that everyone had left. Defendant struck Artie alongside of the head with a pistol and told him "to get down and get the dough because he [defendant] knowed they was still down there . . . ." As Hall was getting to his feet he was struck again and told to get in and get the door to the game open. When Hall arrived at the door to the dice game, defendant took ninety dollars from Hall's back pocket.

Artie Hall knocked on the door and as it opened he was pushed in, followed by de-

fendant and his brother. Defendant announced a holdup and told everyone to put their money on the table. As defendant went around the table he struck several of the players with the gun, knocking them from their chairs. He walked up to Gregory Smith who was standing against the wall and shot him in the mouth. Smith was dead upon arrival at the hospital as a result of the gunshot wound.

## I

The defendant contends that the court erred in giving instruction No. 4, an instruction on felony murder, reading as follows:

"The court further instructs the jury that under the law of this state every homicide which shall be committed in the perpetration of a robbery, is deemed Murder in the First Degree. And in this case, if the jury find and believe from the evidence, beyond a reasonable doubt, that a homicide occurred while the defendant was in the act of attempting to commit a robbery as set out in Instruction No. 3, then such perpetration stands in lieu of deliberation and premeditation as hereinbefore defined, and the jury will be warranted in finding the defendant guilty of Murder in the First Degree and should so say in their verdict."

He contends it was not supported by the evidence "since the homicide was not committed in the perpetration of the robbery of Artie Hall." From his argument it appears that the basis for this contention is that the robbery referred to in the instruction, that of Artie Hall, was completed before the shooting of Gregory Smith.

For the purposes of this opinion we will assume, as defendant contends, that the instruction requires a finding that the killing of Gregory Smith occurred in the perpetration of the robbery of Artie Hall. The court also gave No. 2, an instruction on first degree murder in the traditional form, and instruction No. 3, on robbery in the first degree.

■ It has long been held in this State that "when the homicide is within the res gestae of the initial crime and is an emanation therefrom,, it is committed in the perpetration of that crime in the statutory sense." *State v. Adams,* 339 Mo. 926, 98 S.W.2d 632, 637 (1936); *State v. Messino,* 325 Mo. 743, 30 S.W.2d 750 (1930).

■ In this case the robbery of Artie Hall was but one step in the announced enterprise to rob the persons who were connected with the dice game. Defendant ordered Artie Hall to get "down [to the dice game] and get the dough." The jury could reasonably find that Artie Hall was intended to be used as an instrument of the enterprise, as well as one of the victims of the scheme to rob all of the persons at the game. He was kept under the domination of the defendant and his accomplices pending the completion of the robbery. There was sufficient evidence to warrant the finding that the killing occurred in the perpetration of the robbery of Artie Hall as part of the common scheme to rob the participants in the dice game.

■ Having reached this conclusion it was proper, contrary to defendant's contention, to instruct on alternative theories of guilt, because "alternate theories supporting conviction may be submitted if each theory is supported by evidence." *State v. Green,* 511 S.W.2d 867, 874[13] (Mo.1974).

## II

Defendant filed a motion for the appointment of a psychiatrist which was granted. Defendant was committed by the court to State Hospital # 1 at Fulton, Missouri, for mental examination or evaluation. On April 9, 1973, the report of the examination was filed with the Clerk of the Circuit Court for Criminal Causes. It was signed by a staff physician of State Hospital # 1, who was a doctor of osteopathy. Defendant filed a "Motion to Set Aside Certificate of Examination" on the ground that there was no indication that defendant was ex-

amined by a licensed psychiatrist.[1] The motion was heard and overruled.

Defendant contends that the court erred in overruling his Motion to Set Aside Certificate of Examination because it was not prepared by a "qualified psychiatrist", nor was there any indication that it was based upon an examination by a "qualified psychiatrist".

■■■ At the hearing on the motion the court, without objection, read into the record portions of a letter from the Superintendent of State Hospital # 1 with respect to the experience and qualifications of the doctor who certified the report.[2] Defendant does not even now question the admissibility of that letter. However, it is unnecessary for us to consider that letter because the contention raised by defendant was recently considered and ruled adversely to defendant. *Norwood v. State*, 529 S.W.2d 465 (Mo.App., St.L.Dist.1975) holds that a doctor of osteopathy is a physician within the meaning § 552.020(2).[3] Defendant's only objection to the qualifications of the certifying physician was that he was not a licensed psychiatrist. He did not question the professional qualifications of the individual physician as such. The issue as presented was one of statutory interpretation; a legal issue, not a factual issue. Nevertheless if the defendant wished to question the qualifications of the physician individually he should have exercised his "right to summon and to cross-examine the physicians . . ." § 552.020(6). Contrary to defendant's argument he would not have had to call the examining physician as his own witness, but could have called him as an adverse witness subject to cross-examination.

Defendant was examined as provided by statute, and the trial court properly overruled defendant's Motion to Set Aside the Certificate of Examination.

## III

■■■ In addition to the Motion to Set Aside the Certificate of Examination, defendant filed what he denominated as "Objection to Report of Examination." The report of the examination which was made of defendant at State Hospital # 1 was received by counsel on April 11, 1973. The report had been filed in the office of the clerk on April 9. The motion of defendant was filed 7 days later, on April 16. The motion states that the defendant was objecting to the findings included in the report of examination in accordance with the provisions of § 552.020(4). Defendant also alleged that he was indigent and without funds to employ the services of a psychiatrist. Defendant prayed that the court order an examination by a psychiatrist at Malcolm Bliss Mental Health Center.

The court conducted a hearing with respect to the motion which was overruled.[4] The reason given by the court was that the motion was untimely because it was not filed within 5 days after the date upon which the report had been filed with the clerk of the court, as provided by § 552.-020(4).

Two sections of Chapter 552 make provision for a second mental examination. Under § 552.020(4) the court is required to grant either party a second examination as to defendant's competency to stand trial, if the written request is made within five days after the *filing* of the report. Under § 552.030(4) the court must grant either

1. We are not aware of any licensing procedure for psychiatrists. For the purpose of this opinion we will assume that this is a reference to Board Certified Psychiatrists.

2. The letter informed the court that after one year of internship Dr. Bratkowski served a three year residency in psychiatry followed by eight years of duty in that specialty at State Hospital # 1. The doctor had successfully completed the first part of the Board Examination in Psychiatry.

3. All Statutory References are to RSMo 1969, V.A.M.S.

4. The court memorandum reads: "Objection to report of examination heard, argued and overruled."

party a second examination respecting defendant's mental condition as it affects his responsibility to commit a crime, if a written request is made within 5 days after the report of examination is *received* by the party making the request. Under each section of the statute the examination is to be made by a physician, chosen and paid by the party making the request.

It is clear from the transcript that both the court and counsel considered this motion to be only a request for a second examination.[5] The only relief requested was a second examination. By its express terms the motion can only be read as requesting relief under § 552.020(4). As such it was untimely filed. *State v. Terry,* 472 S.W.2d 426, 430 (Mo. banc 1971).

■ Even if we could read the motion as a request for an examination under § 552.-030(4), as well as § 552.020(4), the court did not err in overruling the motion. Both sections require that the examination be made at the expense of the party making the request. The defendant's motion alleged that he was indigent and unable to pay for an examination. That defendant cannot obtain a second examination without cost has been definitely settled in this State and requires no further discussion. *State v. Sturdivan,* 497 S.W.2d 139, 144[17] (Mo. 1973).

Defendant ingeniously suggests that his request that he be examined at a State institution renders the issue of expense "irrelevant." This approach is without merit because State institutions are required to charge for the expenses and fees of examinations, which are to be promptly paid. § 552.080. § 191.130. Whether the motion of defendant is considered as a request for a second examination under § 552.020(4) or under § 552.030(4), the ruling of the court was correct and will not be disturbed irrespective of the reason given for the ruling.

*State v. Garton,* 371 S.W.2d 283, 290[7] (Mo. 1963).

■ Based upon the report from State Hospital # 1 the trial court made a finding that defendant had mental fitness to proceed. The report revealed that defendant on January 13, 1972, had gone to Barnes Hospital but was immediately transferred to Malcolm Bliss Mental Hospital. He was admitted under the name of Charles Morris. At that time he behaved somewhat bizarrely for a time but this cleared up. Defendant stated that he had gone to the hospital because he was trying to stop his heroin habit. His first week in State Hospital # 1 presented no problems. Shortly after that he was belligerent and hostile toward employees. From February 15 on he was cooperative and well behaved. It was thought that his hostility was staged. The examination in late March indicated that he was well oriented and aware of his situation. There was no indication that he was suffering any mental disease or defect at the time of the crime or during his hospitalization. Although defendant had expressed some abnormal manifestations while in the hospital, the staff considered him to be malingering. The report also indicated he had gone to Malcolm Bliss Hospital shortly after his arrest. The comment of the examining physician there was, "I feel this man is trying to get out of staying in jail."

The report's findings were:

"1) That the accused has no mental disease or defect within the meaning of Section 552.010.

2) That the accused has the capacity to understand the proceedings against him and can assist in his own defense.

3) That the accused did know and appreciate the nature, quality and wrongfulness of his alleged conduct and was capable of conforming his conduct to the requirements of the law.

5. Counsel states ". . . a timely filed objection results in a right to a re-examination."

4) That the accused does not require hospitalization pending further proceedings."

On 5/7/73, 6/4/73, and 6/18/73, defendant obtained continuances and in each request he stated he was denied the opportunity to proceed because his request for a second examination was denied. However, he did not renew his request for a second examination. With the additional time available industrious counsel must have explored other means of determining defendant's mental condition. Defendant did not change his plea or state that it was his intention to do so.

In this case there is no indication that defendant could not or did not cooperate with counsel in the preparation of the case. There was no contention at trial that defendant was not competent to proceed. Counsel in fact announced that he was fully prepared to try the case on the merits. Nothing occurred during the trial to indicate to the court that defendant was suffering from a mental disease of any kind. Defendant does not now contend that he was not competent to stand trial or that he was suffering from a mental disease or defect which would exclude responsibility for his acts.

On July 11, almost a month before the trial on August 6, the prosecutor wrote a letter to defendant's counsel advising him that the State would consent to a second psychiatric examination if defendant would refile his request. Defendant replied that the court had ruled and he would not make a motion for a second examination. Able counsel made a conscious strategic decision to preserve what he then perceived might be error for his client. When assigned to the trial division, defendant did not request a continuance for the purpose of obtaining an additional examination. We also take note of the fact that the court offered to permit defendant to present any evidence which he might have as to any mental condition that would exclude responsibility. Defendant announced that he had no evidence to present because he was denied the second examination. Therefore, under the circumstances of this case there was no reason for the court to act sua sponte. *Newbold v. State*, 492 S.W.2d 809, 819 (Mo. 1973); *State v. McIntosh*, 492 S.W.2d 843, 845[2] (Mo.1973).

As stated earlier the court committed no error in denying the request for the second examination.

■ We take cognizance of the fact that this case was tried and argued before this court prior to *State v. Baker*, 524 S.W.2d 122 (Mo.1975). We cannot determine from the record whether the consecutive sentence was based upon the exercise of the court's discretion or whether it was imposed under the compulsion of § 546.480. We thus set aside the consecutive sentences and remand the cause for the sole purpose of resentencing within the court's discretion, in accordance with *State v. Baker, supra*. See also *State v. McCollum*, 527 S.W.2d 710, 714 (Mo.App.1975). In all other respects the judgment is affirmed.

CLEMENS, P. J., and KELLY, J., concur.